[No. B119186. Second Dist., Div. Five. June 30, 1999.]

LA FE, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.C.

232

1

## COUNSEL

Saphier, Rein & Walden and Robert S. Rein for Plaintiffs and Appellants.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Roderick E. Walston, Chief Assistant Attorney General, Richard M. Frank, Assistant Attorney General, and Jamee Jordan Patterson, Deputy Attorney General, for Defendant and Respondent California Coastal Commission.

Lloyd W. Pellman, County Counsel, and Thomas J. Faughnan, Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

This case presents the question whether a lot line adjustment constitutes "development" that falls within the permit jurisdiction of the California Coastal Commission (the commission) under the California Coastal Act of 1976 (Pub. Resources Code,[1] § 30000 et seq.) (the act). The Supreme Court noted this issue, but did not decide it, in *Landgate, Inc.* v. *California Coastal Com.* (1998) 17 Cal.4th 1006, 1024-1025 [73 Cal.Rptr.2d 841, 953 P.2d 1188]. Plaintiffs, La Fe, Inc., Robert Rein, Susan Brown, David Brown, Larry Goodwin, Thomas Hudson, and Deborah Hudson, appeal from a judgment denying their petition for writs of mandate and related relief against defendants, the County of Los Angeles (county), and the commission. Section 30106 provides that "development" means "change in the density or intensity of use of land, *including, but not limited to,* subdivision . . . , and any other division of land, including lot splits . . ." (Italics added.) Given this broad language selected by the Legislature, we conclude the lot line adjustments in this case constitute "development" within the meaning of the act. Accordingly, we affirm the judgment.

## II. THE COASTAL ACT OF 1976

The Supreme Court summarized the nature and purpose of the act in *Yost* v. *Thomas* (1984) 36 Cal.3d 561, 565 [205 Cal.Rptr. 801, 685 P.2d 1152]: "The Coastal Act of 1976 . . . was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. The Legislature found that 'the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people'; that 'the permanent protection of the state's natural and scenic

---

[1] All further statutory references are to the Public Resources Code except where otherwise noted.

resources is a paramount concern'; that 'it is necessary to protect the ecological balance of the coastal zone' and that 'existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state . . .' (§ 30001, subds. (a) and (d))." (Fn. omitted.) The act's goals are protection of the coastline and its resources and maximization of public access. (*Landgate, Inc.* v. *California Coastal Com.*, *supra*, 17 Cal.4th at p. 1011; *Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 571 [276 Cal.Rptr. 410, 801 P.2d 1161]; §§ 30001.5, 30512, 30513.) With respect to new development, the legislative policies expressed in the act include "[p]ermitted development shall be sited and designed . . . to minimize the alteration of natural land forms." (§ 30251; e.g., *Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 551-554 [223 Cal.Rptr. 792]; *Bel Mar Estates* v. *California Coastal Com.* (1981) 115 Cal.App.3d 936, 940-942 [171 Cal.Rptr. 773].) Another purpose is to "[m]inimize risks to life and property in areas of high geologic, flood, and fire hazard." (§ 30253, subd. (1); e.g., *Barrie* v. *California Coastal Com.* (1987) 196 Cal.App.3d 8, 20-22 [241 Cal.Rptr. 477]; *Ibarra* v. *California Coastal Com.* (1986) 182 Cal.App.3d 687, 693-694 [227 Cal.Rptr. 371].) The act is to be liberally construed to accomplish its purposes and objectives. (§ 30009; *Ojavan Investors, Inc.* v. *California Coastal Com.* (1997) 54 Cal.App.4th 373, 386 [62 Cal.Rptr.2d 803]; *California Coastal Com.* v. *Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 609 [170 Cal.Rptr. 263].)

Under section 30600, subdivision (a), of the act, anyone who wishes to undertake development in a coastal zone must obtain a permit from the commission. This is in addition to any other permit required by law. Section 30600, subdivision (a), provides: "[I]n addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency, any person . . . wishing to perform or undertake any *development* in the coastal zone . . . shall obtain a coastal development permit." (Italics added; e.g., *Conway* v. *City of Imperial Beach* (1997) 52 Cal.App.4th 78, 85 [60 Cal.Rptr.2d 402]; *Surfrider Foundation* v. *California Coastal Com.* (1994) 26 Cal.App.4th 151, 154 [31 Cal.Rptr.2d 374].) "Development" is defined for purposes of the act in section 30106, which provides in relevant part: " 'Development' means, on land, in or under water . . . change in the density or intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act . . . and any other division of land, including lot splits . . ." (E.g., *California Coastal Com.* v. *Quanta Investment Corp.*, *supra*, 113 Cal.App.3d at p. 609 [conversion of existing apartments into stock cooperative constitutes development].)

## III. BACKGROUND

Plaintiffs own 16 parcels of land in the Topanga Canyon area. They sought to adjust the lot lines between the 16 parcels which covered 92 acres. The lot line changes did not create any new parcels. In other words, plaintiffs reconfigured the 16 lots without increasing the number of parcels. The county approved the lot line adjustments in concept but advised plaintiffs they were required to obtain the commission's approval.[2]

The commission found that Hillside Drive, which provided access to the property where the lot line adjustments were to take place, was inadequate for the provision of emergency vehicle access. The commission had a significant number of reports and other documents before it in making the decision to deny the request for a lot line adjustment. Among the documents was a series of reports prepared in connection with a request made to the Los Angeles County Regional Planning Commission to subdivide a lot. On March 4, 1996, the Los Angeles County Regional Planning Commission denied a request to subdivide one of the sixteen parcels into three lots. One of the parcels was included in the 16-lot line adjustment proposal before the commission, which is the subject of the present appeal. The basis of the denial by the Los Angeles County Regional Planning Commission was that the fire access route was inadequate. The Los Angeles County Fire Department had recommended denial of the three-lot subdivision by the Los Angeles County Regional Planning Commission because access to the area was inadequate to ensure the safe evacuation of future residents and the deployment of fire and other emergency equipment. In connection with the request to the Los Angeles County Regional Planning Commission, the Los Angeles County Fire Department made the following recommendation: "The planning issues focus with the lack of access. At this time the single means of access has exceeded the maximum of 37 units. The proposed subdivision is both narrow and treacherous and would add substantially to life safety concerns in the immediate area." Moreover, there was a report considered by the regional planning commission by a fire management consultant that identified the extensive brush fire history of the area.

Further, among the documents concerning the present lot line adjustment request before the commission was a letter from Jesus Burciaga, the fire marshal of the fire prevention division of the Los Angeles County Fire

---

[2]The county notified plaintiffs: "Because your property lies within the boundaries of the Coastal Zone, you will be required to obtain approval from the California Coastal Commission for your Lot Line Adjustment. When you obtain this approval, return it to Regional Planning and we will sign and record the original of the attached Lot Line Adjustment request."

Department, which stated: "If this Lot Line Adjustment is permitted to proceed, the Fire Department will be prevented from setting requirements until the building permit stage, and only on the individual lots as development proceeds. This procedure would prevent the Fire Department from uniformly requiring an adequate water system or access to the area. The project would not be in conformance with standards for newly created lots. It moves lots (building sites) from street frontage, further into an extremely dangerous area without any form of mitigation. If permitted to move forward, it does nothing to minimize risks to life and property, but in fact puts additional life and property at risk. [¶] A comprehensive solution to adequate emergency service is essential and should not be replaced by ad hoc treatment of building permits on a lot by lot basis. The inherent risk of development in this remote and high danger area can only be mitigated by comprehensive and early solutions. Such solutions, if available at all, cannot be applied on a lot by lot basis."

The commission denied plaintiffs' application for a coastal development permit or waiver.[3] The commission found that the proposed lot line adjustments would result in an increase from 5 to 15 lots located on the mesa area of the property, with the 10 additional parcels taking access from Hillside Drive. The commission concluded, therefore, that the proposed lot line adjustment would not minimize risks to life and property in a high fire hazard area, as required by section 30253, subdivision (1). The commission also found that to improve the existing road or to create a secondary access would require excessive landform alteration, contrary to the mandate of section 30251. Therefore, on April 10, 1997, the commission declined to issue a coastal development permit approving the lot line adjustment to plaintiffs. This action followed.

The operative pleading is a first amended verified petition for writs of mandate (Code Civ. Proc., § 1085) against defendants which also contained claims for inverse condemnation, declaratory relief, and deprivation of civil rights. The mandate petitions were denominated the first and second causes of action. The first cause of action was directed at the county. The second cause of action sought relief against the commission. Plaintiffs alleged: the county approved their lot line adjustments in concept; improperly refused to issue a certificate of compliance; the county directed plaintiffs to apply to the commission for a coastal development permit waiver; further, the commission, which denied plaintiffs' application, had no jurisdiction to consider the lot line adjustments because they did not constitute "development"

---

[3]Plaintiffs claim they sought a *waiver* of the coastal development permit requirement, but filled out the only form provided to them, an application for a permit. Whether plaintiffs applied for a permit or for a waiver is immaterial to the issue on appeal.

within the meaning of section 30106 of the act. In the first cause of action, plaintiffs sought a peremptory writ of mandate ordering the county to record a certificate of compliance for plaintiffs' lot line adjustments. In the second cause of action, plaintiffs requested a peremptory writ of mandate ordering the commission to grant their permit waiver application.

As to the first cause of action, the petition for a writ of mandate against the county was also denied. The trial court stated: ". . . The County acknowledged at the hearing that it did not finally approve [plaintiffs'] application for lot line adjustments because the County considered the final approval to be the domain of the Coastal Commission. However, the County acknowledged that it had given its 'approval in concept' and would impose no further requirements other than those imposed, if any, by the California Coastal Commission. Since the Petition for Writ of Mandate against the County of Los Angeles was premised on the assumption that the California Coastal Commission had no jurisdiction over the proposed lot line adjustments, and in light of the court's ruling that the California Coastal Commission has such jurisdiction, the Petition for Writ of Mandate against the County is denied."

As to the second cause of action, the trial court denied the petition for writ of mandate against the commission. The trial court found as follows: "[T]he lot line adjustment constitutes a 'division of land' as that term is used in Public Resources Code Section 30106. Public Resources Code Section 30106 defines a 'development' to include a change in the density or intensity of use of land, including but not limited to, subdivision pursuant to the Subdivision Map Act, and any other division of land, including lot splits. The court finds that a lot line adjustment is a division of land similar to a lot split. Although a lot split divides a parcel of property into a greater number of lots or parcels, a lot line adjustment divides land by changing the boundaries of the various parcels without changing their number. In either case, the reconfiguration of the land can facilitate a development in ways that impact upon the interest of the Coastal Commission. In the present case, the Coastal Commission found that the lot line adjustments proposed by [plaintiffs] facilitated development by making all of the lots accessible to a public street, but the public street was insufficient to provide access to the developed lots by fire fighting equipment. The Coastal Act is to be liberally construed to accomplish its purposes and objectives, and the lot line adjustment requested in the present case is within the purview of the phrase 'any other division of land' as set forth in Public Resources Code Section 30106, and furthers the purpose of the act. *California Coastal Commission* v. *Quanta Investment Corp.*, 113 Cal.App.3d 579, 609 (1980)."

Following the denial of the writ petitions, the trial court dismissed the remaining causes of action. The trial court stated: "All other claims and

causes of action against the County, the Coastal Commission and the named individuals are dismissed. This judgment constitutes a final judgment as to all claims and causes of action in the First Amended Verified Petition and Complaint." Plaintiffs do not contest the dismissal of the remaining causes of action separate and apart from the denial of their writ requests. They argue only that lot line adjustments are not "development" within the meaning of the act; therefore, the commission had no jurisdiction and the trial court erred in denying their writ petition.

## IV. DISCUSSION

### A. *Second Cause of Action Against the Commission*

Plaintiffs' claims against the county are dependent in material part on whether the commission acted appropriately. Therefore, we address the second cause of action first. Plaintiffs contend the commission was without jurisdiction to act because lot line adjustments do not constitute "development," within the meaning of section 30106, for which a coastal development permit or waiver is required. We conclude the lot line adjustments in this case constituted development within the meaning of the act, therefore, the commission had permit jurisdiction.

The rules governing statutory construction are well settled. The Supreme Court has held: "We interpret statutory language according to its usual and ordinary import, keeping in mind the apparent purpose of the statute. [Citation.] When no ambiguity appears, we give statutory terms their plain meaning. [Citation.]" (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114], citing *People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232], and *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) The Supreme Court has noted: " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We

must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People* v. *Coronado, supra,* 12 Cal.4th at p. 151, citing *People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) The commission's construction of the statute is entitled to great weight. (*Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 694 [183 Cal.Rptr. 395]; see *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 878 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds in *Metromedia, Inc.* v. *City of San Diego* (1981) 453 U.S. 490, 521 [101 S.Ct. 2882, 2899-2900, 69 L.Ed.2d 800]; 58 Cal.Jur.3d, Statutes, § 111, pp. 496-497.) Further, the terms of the statute are plain and clear, and we presume the Legislature meant what it said. (*People* v. *Snook* (1997) 16 Cal.4th 1210,1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; *Romano* v. *Rockwell Internat., Inc., supra,* 14 Cal.4th at p. 493; *People* v. *Coronado, supra,* 12 Cal.4th at p. 151.) There are no factual disputes in this case. Hence, our review of this issue is de novo. ■ (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *California Coastal Com.* v. *Quanta Investment Corp., supra,* 113 Cal.App.3d at p. 595.)

■ We conclude, that given the undisputed facts in this case, liberally construed (§ 30009; *California Coastal Com.* v. *Quanta Investment Corp., supra,* 113 Cal.App.3d at p. 609), "development," as defined in section 30106, includes lot line adjustments. Specifically, "development" means "change in the density or intensity of use of land, *including, but not limited to,* subdivision . . . , and any other division of land, including lot splits . . ." (§ 30106, italics added.) The Legislature's stated intent was to grant the commission permit jurisdiction with respect to any changes in the density or intensity of use of land, including any division of land. Section 30106 by its terms recognizes that a subdivision of land or a lot split can result in changes in the density or intensity of use of property. A lot line adjustment can, as here, have the same effect. More to the point though, section 30106 explicitly applies to a "subdivision . . . and any other division of land . . ." A lot line change constitutes a "division of land." The key point is that section 30106 applies to a "division of land" and such occurred here.[4]

Our conclusion is consistent with the holding in *California Coastal Com.* v. *Quanta Investment Corp., supra,* 113 Cal.App.3d at pages 608-609. In

[4]The commission found the proposed lot line adjustments changed the density and intensity of the use of the land by increasing the number of lots on the mesa and parcels taking access from a certain road. Here, the commission's concerns about emergency vehicle access in an

*Quanta Investment Corp.*, Division One of the Court of Appeal for this appellate district held that the conversion of existing apartment units into a stock cooperative form of ownership was a "division of land" and hence "development" under the act. Our Division One colleagues concluded a stock cooperative conversion was not a "subdivision pursuant to the Subdivision Map Act . . . ." (§ 30106.) However, it found a stock cooperative conversion *was* a "division of land" within the meaning of the act. Our Division One colleagues described the manner in which section 30106 should be read as follows: "If Public Resources Code section 30106 merely read that a 'development' is 'a division of land including lot splits,' respondents' construction of the phrase in question might carry greater persuasion. But that phrase does not stand in splendid isolation. On the contrary, it is embedded in, and interwoven with, a context dealing with changes in land use 'including, but not limited to, subdivision pursuant to the Subdivision Map Act (commencing with Section 66410 of the Gov. Code), and *any other division of land*, including lot splits, . . . .' (Italics added.) It is apparent that the words 'any other division of land including lot splits' are juxtaposed and connected with the preceding reference to subdivisions under the Subdivision Map Act, which are likewise included within the meaning of 'development' under the Coastal Act. Since those map act subdivisions 'for the purpose of sale, lease or financing' subsume not only physical divisions of unimproved land but also the division of improved land in which interests may be created in entities such as condominiums and community apartments, among others, the use of the words 'any other division of land,' when read in context, conveys a meaning other and more comprehensive than mere physical partition of the terrain." (113 Cal.App.3d at p. 607.) The Court of Appeal concluded a stock cooperative bore "much the same characteristics as a condominium or a community apartment [which are subdivisions under the Subdivision Map Act,] and ha[d] a similar impact on coastal zone development." (*Id.* at p. 609.) Further, the Court of Appeal found: "[B]ecause in genre and gestalt it readily equates with a condominium or community apartment, we conclude that there is no compelling reason to suppose that a stock cooperative conversion was not meant to be included within the purview of the phrase 'any other division of land' and sound principles of statutory construction operate strongly in favor of its inclusion." (*Ibid.*) The Court of Appeal further reasoned that: the act is to be liberally construed to accomplish its purposes; one objective of the act is the provision of low and moderate income housing; and a stock cooperative conversion "may have an impact of concern in this area of Commission interest." (*Ibid.*) Therefore, our Division One colleagues held, "[S]tock cooperative conversions are subject to the permit requirements of the coastal act as falling within the ambit of

---

area of high fire hazard and excessive landform alteration were consonant with the legislative mandate and advanced the goals of the act.

'any other division of land.' " (*Ibid.*, fn. omitted.) The stock cooperative conversion at issue in *Quanta Investment Corp.*, like the lot line adjustments at issue here, did not create additional parcels.

Further, the definition of "development" in section 30106 has been broadly construed in other cases. For example, *Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38 [161 Cal.Rptr. 392], involved the remodeling of a supermarket into 16 small retail shops and a restaurant. The plaintiff argued the project did not constitute development within the act. The Court of Appeal disagreed. The Court of Appeal concluded the project changed the intensity of the use·of the land and therefore was a development within the meaning of the act. (*Id.* at pp. 47-48.) In *Ojavan Investors, Inc.* v. *California Coastal Com., supra,* 54 Cal.App.4th at page 387, Division Seven of the Court of Appeal for this appellate district held that the plaintiffs' purchase and sale of lots "clearly fell within the definition of section 30106." The plaintiffs purchased 54 lots subject to deed restrictions. The result of the restriction was that 77 parcels had been recombined and unified into 2 lots pursuant to an agreement with the commission. The plaintiffs then began to sell the individual lots. The Court of Appeal held: "Since [the plaintiffs'] purchase and sale of individual lots resulted in splitting of the recombined lots, in violation of the declarations of restrictions required as a condition for the Commission's grant of the [predecessors'] permits, [the plaintiffs'] activities clearly fell within the definition of section 30106. Therefore, dividing of the recombined lots triggered Coastal Act liability." (*Ibid.*)

B. *The First Cause of Action Against the County*

 Plaintiffs contend the county was statutorily precluded from conditioning its approval of the lot line adjustments on their securing a coastal development permit or waiver from the commission. They cite Government Code section 66412, subdivision (d), a provision of the Subdivision Map Act. (Gov. Code, § 66410 et seq.) They correctly note that lot line adjustments which do not increase the number of parcels are exempt from the Subdivision Map Act. Government Code section 66412, subdivision (d), provides in relevant part: "This division shall be inapplicable to: [¶] . . . [¶] (d) A lot line adjustment between two or more existing adjacent parcels, where the land taken from one parcel is added to an adjacent parcel, and where a greater number of parcels than originally existed is not thereby created, provided the lot line adjustment is approved by the local agency, or advisory agency." (E.g., *San Dieguito Partnership* v. *City of San Diego* (1992) 7 Cal.App.4th 748, 755 [9 Cal.Rptr.2d 440].) Plaintiffs also correctly describe the Subdivision Map Act as limiting a local or advisory agency's ability to condition its approval of such lot line adjustments. Subdivision (d)

of Government Code section 66412 states: "A local agency or advisory agency shall limit its review and approval to a determination of whether or not the parcels resulting from the lot line adjustment will conform to local zoning and building ordinances. An advisory agency or local agency *shall not impose conditions or exactions on its approval of a lot line adjustment except* to conform to local zoning and building ordinances, to require the prepayment of real property taxes prior to the approval of the lot line adjustment, or to facilitate the relocation of existing utilities, infrastructure, or easements." (Italics added.) Plaintiffs conclude that under Government Code section 66412, subdivision (d), the county was required to issue a certificate of compliance without first referring them to the commission. We disagree.

The county did not impose any condition or exaction on *its* approval of the lot line adjustments. In the trial court, the county acknowledged that it did not finally approve the application for lot line adjustments because it considered the final approval to be the domain of the commission. However, the county acknowledged it had given its approval in concept and would impose no further requirements other than those imposed, if any, by the commission. The county simply deferred to the commission's jurisdiction. The requirement that plaintiffs obtain a coastal development permit or waiver is one imposed by law, not by the county. Under title 14 of the California Code of Regulations, section 13052, the county's approval was a condition precedent to the commission's consideration of plaintiffs' application. Title 14, California Code of Regulations, section 13052 provides in part: "When development for which a permit is required pursuant to Public Resources Code, Section 30600 or 30601 also requires a permit from one or more cities or counties or other state or local governmental agencies, a permit application shall not be accepted for filing by the Executive Director [of the commission] unless all such governmental agencies have granted at a minimum their preliminary approval for said development." Therefore, the county issued its approval in concept "as required for permit application to the California Coastal Commission, South Coast Region[,] pursuant to California Administrative Code, Section 13052." (See § 30600, subd. (a).) (Cf. *San Dieguito Partnership* v. *City of San Diego, supra,* 7 Cal.App.4th at p. 760 [lot line adjustment was not subject to the Subdivision Map Act, but *was* subject to commission provisions.].) In the present case, the county did not improperly condition its approval of plaintiffs' lot line adjustments in contravention of Government Code section 66412, subdivision (d).

### C. *Unpublished Issues**

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 231.

The judgment is affirmed. Defendants, the County of Los Angeles, and the California Coastal Commission, shall each recover their costs on appeal, jointly and severally, from plaintiffs, La Fe, Inc., Robert Rein, Susan Brown, David Brown, Larry Goodwin, Thomas Hudson, and Deborah Hudson.

Armstrong, J., and Godoy Perez, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 20, 1999.