Filed 5/6/13  Laguna Terrace Park v. California Coastal Commission CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAGUNA TERRACE PARK LLC, | |
| Plaintiff and Appellant, | G045986 |
| v. | (Super. Ct. No. 30-2010-00395819) |
| CALIFORNIA COASTAL COMMISSION, | O P I N I O N |
| Defendant and Respondent; | |
| PAUL R. ESSLINGER, | |
| Intervener and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.  Requests for judicial notice.  Denied.

Hart, King & Coldren, Robert S. Coldren and Boyd L. Hill for Plaintiff and Appellant.

Paul J. Beard II for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, and Jamee Jordan Patterson, Deputy Attorney General, for Defendant and Respondent.

No appearance for Intervener and Respondent.

*      *      *

<h1 style="text-align:center">INTRODUCTION</h1>

Laguna Terrace Park LLC (Laguna Terrace) appeals from the judgment entered after the trial court denied its petition for a writ of mandate and damages and a complaint for declaratory and injunctive relief (the petition) against the California Coastal Commission (the Commission). The trial court rejected Laguna Terrace's challenge to the Commission's determination that it had jurisdiction, under the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; hereafter, the Coastal Act), over Laguna Terrace's proposed conversion of a mobilehome park from tenant occupancy to resident ownership.

Laguna Terrace argues (1) the proposed conversion did not constitute a development within the meaning of the Coastal Act (Pub. Resources Code, § 30106), and was otherwise exempt from the Coastal Act's requirements under the Subdivision Map Act (Gov. Code, §§ 66410-66499.37); (2) the Commission wrongfully asserted jurisdiction by considering property beyond the boundaries of the mobilehome park itself; (3) the trial court erroneously failed to grant Laguna Terrace's requests to augment the record with or take judicial notice of the City of Laguna Beach's (the City) administrative record; and (4) the court wrongfully denied Laguna Terrace's request for a statement of decision.

We affirm. After initial briefing had concluded in this appeal, the California Supreme Court issued its opinion in *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 792 (*Pacific Palisades*). The Supreme Court rejected the primary argument asserted by Laguna Terrace, here, and held the

2

conversion of a mobilehome park from tenant occupancy to resident ownership is a development for purposes of the Coastal Act. The Supreme Court further held that Government Code section 66427.5 of the Subdivision Map Act does not provide an exemption for such a development. (*Pacific Palisades*, *supra*, at p. 792.)

The Commission properly considered Laguna Terrace's application as proposing the development of the 270-acre parcel upon which the 20-acre mobilehome park sits. The trial court did not err by refusing to augment the record with or judicially notice the City's administrative record. We deny Laguna Terrace's request that we judicially notice the City's administrative record for the reasons explained *post*. At oral argument, Laguna Terrace withdrew its arguments that the facts relevant to this appeal are disputed and that the trial court erred by denying its request for a statement of decision.

## BACKGROUND

### I.

### LAGUNA TERRACE SUBMITS AN APPLICATION TO SUBDIVIDE AND PRIVATIZE OWNERSHIP OF ITS MOBILEHOME PARK; THE COMMISSION DETERMINES IT HAS ORIGINAL AND APPELLATE JURISDICTION OVER THE APPLICATION.

In April 2010, Laguna Terrace applied to the City for a "vesting tentative tract map that subdivides 157 existing single family residential mobilehome spaces into 157 residential mobilehome lots plus 1 lettered non-residential lot." The application purportedly sought "the simple mapping of existing single family residential spaces under the exclusive provisions of Government Code Section 66427.5." Laguna Terrace's application did not request the issuance of a coastal development permit (CDP); Laguna Terrace took the position the application was exempt from the Coastal Act.

In June 2010, after a hearing, the Commission decided the City's approval of a CDP in connection with Laguna Terrace's application would be appealable to the

3

Commission pursuant to Public Resources Code section 30603, subdivision (a)(2). In determining the jurisdiction issue, the Commission disregarded unpermitted lot line adjustments that had been made in 1995. In July 2010, the City approved, inter alia, a CDP as to the Laguna Terrace application

II.

LAGUNA TERRACE SUES THE COMMISSION FOR UNLAWFULLY ASSUMING JURISDICTION OVER ITS APPLICATION.

In August 2010, Laguna Terrace filed the petition, asserting the Commission had unlawfully assumed administrative jurisdiction over its mobilehome park's proposed conversion to resident ownership. The petition was brought on four grounds: (1) the Commission lacked administrative jurisdiction because the proposed conversion did not qualify as a development under the Coastal Act; (2) even assuming the proposed conversion qualified as a development under the Coastal Act, it was exempt because the Coastal Act expressly provides no CDP is required for a development involving improvements to single-family residences; (3) even assuming the proposed conversion qualified as a nonexempt development under the Coastal Act, "the Laguna Terrace mobilehome park subdivision to be approved by the City of Laguna Beach ('City') is located entirely within the City's Local Coastal Program and does not meet the criteria for Commission appellate jurisdiction"; and (4) "as a matter of procedure, the Commission assumed jurisdiction of the proposed conversion to resident ownership in violation of express principles of fundamental fairness and due process by means of biased and undisclosed ex parte and other unofficial communications."

The petition sought a peremptory writ of mandate directing the Commission to vacate and set aside its decision that it "has jurisdiction over the Application, Park Map and/or CDP," and civil penalties under the Coastal Act (Pub. Resources Code, §§ 30327, 30824). The petition also asked for injunctive relief "restraining the Commission from proceeding with any appeals from the CDP or from

4

enforcing any alleged violation pertaining to the 1995 lot line adjustment," and a judicial declaration that "the Commission does not have any jurisdiction over the Application, Park Map and/or CDP and that the 1995 lot line adjustment is valid, legal and binding on the Commission." The petition also sought damages and reasonable attorney fees under Code of Civil Procedure section 1021.5.

Intervener Paul R. Esslinger filed a motion for leave to intervene in the action because (1) he had filed an appeal with the Commission, challenging the City's approval of Laguna Terrace's CDP; (2) he owned real property that is adjacent to the "Project site" and would be impacted by the project; (3) "the disposition of the Action in Esslinger's absence would impair and/or impede his ability to protect his interests because, contrary to Esslinger's position, [Laguna Terrace] contends that the Commission lacks jurisdiction to hear or decide the Appeal"; and (4) his "interests cannot be adequately represented by the existing parties."

The trial court granted Esslinger's motion and ordered his proposed complaint in intervention be deemed filed. Esslinger's complaint in intervention prayed that all of the relief sought in the petition be denied with prejudice and also sought attorney fees and costs.

The trial court denied Laguna Terrace's motion to augment the record to include the City's administrative record of its issuance of the CDP.

Before the hearing on the petition, Laguna Terrace requested that the trial court take judicial notice of "[a] true and correct copy of the City of Laguna Beach Administrative Record" and "[a] true and correct copy of the California Coastal Commission Consent Cease and Desist Order . . . and Consent Restoration Order . . . and Exhibit B thereof . . . copied from the Commission website." Esslinger requested that the trial court take judicial notice of a comparison map "intended to clarify and illustrate the boundaries of the Vesting Tentative Tract Map No. 17301 dated March 11, 2010" and

5

"[t]he graphic prepared by the [Commission] . . . regarding the coastal development permit at issue in this action."

Shortly before the hearing on the petition, Laguna Terrace filed a request for a statement of decision which identified 10 controverted issues.

III.

THE TRIAL COURT DENIES THE PETITION.

After the hearing on the petition, which occurred on April 18, 2011, the trial court took the matter under submission. On June 29, the court issued a minute order in which it denied the petition and explained its ruling as follows:

"Petitioner Laguna Terrace Park LLC ('Laguna Terrace') challenges the decision of respondent California Coastal Commission ('Commission') that the latter has appellate jurisdiction over the decision of the City of Laguna Beach (['])City') to approve Laguna Terrace's application to subdivide a mobile home park into separate parcels, each containing one mobile home.

"This dispute is significantly impacted by the legal effect of the following undisputed facts:

"—Laguna Terrace's application to the City related solely to the twenty acres occupied by the subject mobile home park.

"—Until 1995, those twenty acres were part of a 270-acre parcel.

"—In 1995, the City approved two lot line adjustments affecting the 270-acre parcel. This action gave birth to the twenty-acre parcel that is the subject of the disputed application approved by the City and challenged by the Commission.

"—No coastal development permit was obtained for the 1995 lot line adjustments.

"The foregoing facts are at the heart of the following competing contentions advanced by the parties:

6

"Laguna Terrace argues that the City's approval of the subdivision of the twenty-acre parcel, as a prelude to individual ownership of the 157 units in the mobile home park, is specifically authorized by Government Code section 66427.5 and is beyond the authority of the Commission.  The Commission insists that its approval was required for the 1995 lot line adjustments; in the absence of such approval, the present application must be viewed as a development of the entire 270-acre parcel; as such, it cannot be cloaked by the terms of section 66427.5 and is subject to Commission jurisdiction.

"The parties focus their attention on Public Resources Code section 30106 which defines a 'development' subject to Commission authority.  Only a legislative drafter could love the first paragraph of this code section, which is a 186-word sentence defining 'development' in terms that include thermal waste, kelp harvesting, and (hurrah!) lot splits.  This court has had two sources of help in reaching its conclusion that the 1995 actions by the City constituted development of the 270-acre parcel.  The first is Section 30106.  With appropriate elisions, that statute states that '"Development" means . . . change in the density or intensity of use of land, including, but not limited to . . . any . . . division of land, including lot splits . . . .'  Second, the court in *La Fe, Inc. v. County of Los Angeles* (1999) 73 Cal.App.4th 231, 240 concluded that 'section 30106 explicitly applies to a "subdivision . . . and any other division of land . . ." A lot line change constitutes a "division of land."'

"Laguna Terrace suggests that there must be a specific finding of a change in the density or intensity of use of land (beyond the mere lot split) for a lot split to constitute a development within section 30106.  This court disagrees, and, so does the appellate court in *La Fe*.  The legislature and the court of appeal have told us that a lot split is a kind of 'change in the density o[r] intensity of use of land.'

"The Commission has acknowledged that 'If these lot lines [the 1995 actions] had all of the Coastal Act authorization(s), the City's latest action may not have been appealable . . . .'  AR 1434.  But our situation is different.  The 1995 actions

7

required Commission approval.  In that absence, 'the Commission properly reviewed [Laguna Terrace's] . . . application as though the unpermitted development had not occurred.'  *LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770, 797.  When the pending application is properly viewed as a proposed development of the 270-acre parcel, Commission jurisdiction readily follows.

"Laguna Terrace's other objections are rejected.  Many of these posit an absence of evidence to support the Commission's conclusions and action, but the central issue outlined above is based upon undisputed facts in the record.  The court also rejects Laguna Terrace's request to take judicial notice of material not considered by the Commission.  Nor does the court find any unfairness in the Commission's procedures.

"In brief summary, Laguna Terrace's petition is denied.  Counsel for the Commission is directed to prepare and submit a judgment consistent with the foregoing." (Original ellipses.)

IV.

THE TRIAL COURT REJECTS LAGUNA TERRACE'S CLAIMS AND DOES NOT ISSUE A STATEMENT OF DECISION; JUDGMENT IS ENTERED; AND LAGUNA TERRACE APPEALS.

On June 30, 2011, the trial court issued the following minute order:  "In its minute order stating its decision in this matter, the court did not directly respond to the questions posed in Petitioner's Request for Statement of Decision.  It is unnecessary to do so.  Those questions are barely-disguised argumentative contentions advanced by Laguna Terrace.  Comments about 'significant unreported ex parte communication' and 'incorrect legal conclusions' of the Commission and the like present the Petitioner's point of view.  The court's earlier minute order shows that it disagreed with these characterizations and explained how it reached its decision on the principal controverted issues herein."  The court did not issue a statement of decision.

Judgment was entered in August 2011.  The judgment stated that the trial court "admitted the Commission's administrative record into evidence, denied Laguna

8

Terrace's request to take judicial notice of matters not considered by the Commission, read and considered the briefs of the parties, heard oral argument and took the matter under submission. The Court issued minute orders on June 29, 2011, and June 30, 2011, explaining its decision to deny the petition for writ of mandate and all other relief." The judgment further stated that the petition for a writ of mandate was denied and "[a]ll of Laguna Terrace's other claims for relief are denied."

Laguna Terrace appealed. Laguna Terrace filed a request that this court take judicial notice of the City's administrative record. Laguna Terrace filed another request for judicial notice, in which it requested that this court judicially notice events that occurred after the Commission's jurisdiction determination. We directed the parties to submit letter briefs addressing whether this appeal is moot as a result of the events described in the second request for judicial notice and its attached documents. In their respective letter briefs, Laguna Terrace and the Commission stated the appeal was not mooted by the subsequent events described in Laguna Terrace's second request for judicial notice, or by the California Supreme Court's recent decision in *Pacific Palisades*, *supra*, 55 Cal.4th 783.

## DISCUSSION

### I.

#### STANDARD OF REVIEW ISSUES

The judgment not only denied Laguna Terrace's "First Cause of Action for Writ of Mandate," it also rejected Laguna Terrace's "Second Cause of Action for Declaratory and Injunctive Relief," and thereby triggered the application of different standards of review of the judgment. (Boldface, underscoring, & some capitalization omitted.)

For example, "[i]n reviewing a decision denying a petition for administrative mandate, our role is identical to that of the trial court. 'We review the administrative

9

record to determine whether the *Commission's* findings are supported by substantial evidence.' [Citation.] To the extent the case involves the interpretation of a statute, which is a question of law, we engage in a de novo review of the trial court's determination. [Citation.] "'Courts may reverse an agency's decision only if, *based on the evidence before the agency*, a reasonable person could not reach the conclusion reached by the agency."'" (*Reddell v. California Coastal Com.* (2009) 180 Cal.App.4th 956, 962, first italics added; see *Security National Guaranty, Inc. v. California Coastal Com.* (2008) 159 Cal.App.4th 402, 414 ["When the determination of an administrative agency's jurisdiction involves a question of statutory interpretation, 'the issue of whether the agency proceeded in excess of its jurisdiction is a question of law'"].)

On the other hand, "'[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate.' [Citation.] The grant or denial of a permanent injunction rests within the *trial court's* sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390, italics added.)

Here, the minute order sets forth findings by the Commission that the trial court adopted and characterized as "undisputed facts." As clarified in oral argument on appeal, Laguna Terrace neither disputes any of the relevant facts relied upon by the Commission and the trial court, nor contends the Commission's or trial court's findings are unsupported by substantial evidence. Instead, Laguna Terrace's appeal challenges the Commission's and trial court's interpretation of the Coastal Act and the Subdivision Map

10

Act in light of those undisputed facts.[1]  In reviewing a trial court's interpretation of a statute, "which is a question of law, we engage in a de novo review of the trial court's determination." (*LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770, 780.)  We therefore conduct a de novo review of the Commission's and trial court's statutory interpretation, assuming the truth of the Commission's and trial court's findings as contained in the minute order.

## II.

### OVERVIEW OF THE COASTAL ACT AND THE SUBDIVISION MAP ACT

Laguna Terrace's issues on appeal involve the proper interpretation of the Coastal Act and the Subdivision Map Act.  As recently stated by the California Supreme Court in *Pacific Palisades*, *supra*, 55 Cal.4th at pages 793-794, "[t]he Coastal Act 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. . . .' [Citation.]  The Coastal Act is to be 'liberally construed to accomplish its purposes and objectives.' [Citation.]  Under it, with exceptions not applicable here, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit 'in addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency . . . .'"  The court held the Subdivision Map Act applies to mobilehome park conversions. (*Pacific Palisades*, *supra*, at p. 800.)

## III.

### THE TRIAL COURT DID NOT ERR IN RULING ON THE PETITION.

In its opening brief, Laguna Terrace argues the judgment should be reversed for four reasons.  We address each contention of error in turn.

---

[1]  We understand that Laguna Terrace's agreement that the relevant facts are undisputed is limited to the resolution of the issues presented in this appeal only.

A.

*The California Supreme Court in* Pacific Palisades *Rejected Arguments That a Proposed Conversion Was Not a Development Within the Meaning of the Coastal Act and That Even If It Was, It Was Exempt from the Requirements of the Coastal Act, Pursuant to Government Code Section 66427.5.*

After initial briefing was completed in this appeal, the California Supreme Court issued its decision in *Pacific Palisades*, *supra*, 55 Cal.4th at page 792, which held, "the requirements of the California Coastal Act of 1976 [citation] . . . appl[ies] to a proposed conversion, within California's coastal zone, of a mobilehome park from tenant occupancy to resident ownership. In so holding, we reject the argument that such a conversion is not a 'development' for purposes of the Coastal Act, and further reject the argument that Government Code section 66427.5, a provision of the Subdivision Map Act (Gov. Code, §§ 66410-66499.37), exempts such conversions from the need to comply with other state laws, or precludes local governmental agencies from exercising state-delegated authority to require compliance with state laws such as the Coastal Act."

In its letter brief, Laguna Terrace acknowledges that "[t]he holding in *Pacific Palisades* rejects Laguna Terrace's argument that [lot line adjustment] No. 95-01 and the Tract Map were not a 'development' subject to the Coastal Act." Although its letter brief does not expressly say so, Laguna Terrace has necessarily jettisoned its argument that Government Code section 66427.5 exempted the proposed conversion from compliance with the Coastal Act, in light of *Pacific Palisades*. Laguna Terrace did not include that issue in its list of "material questions that remain with respect to the appeal."[2]

_____

[2] In its letter brief, Laguna Terrace states that the appeal is not moot because two issues remain: (1) whether the Commission acted in excess of its statutory authority "in considering a different property than the Park being subdivided by the Tract Map"; and (2) whether the Commission's approval of a lot line adjustment CDP after the Commission's determination of jurisdiction regarding the proposed conversion (which approval is the subject of Laguna Terrace's second request for judicial notice filed in this

12

B.

*The Commission Did Not Improperly Consider Land Beyond the Boundaries*
*of the Mobilehome Park Itself in Determining Its Jurisdiction.*

Laguna Terrace argues the Commission inappropriately determined its jurisdiction by considering an area beyond the boundaries of the mobilehome park itself. For the reasons we explain, we conclude the Commission properly reviewed Laguna Terrace's application involving the property on which the mobilehome park sits, as though unpermitted development had not occurred.

We begin our analysis of Laguna Terrace's argument by quoting from pertinent portions of the report of the Commission's "Findings and Declarations" addressing this issue. The report states: "The subject site is an approximately 270 acre area partly developed with a mobile home park located at 30802 Coast Highway, in the City of Laguna Beach, Orange County (Exhibit #1). The developed part of the mobile home park occupies about 14 acres within and at the mouth of a steeply sided canyon. . . . The majority of the developed part of the park is surrounded by undeveloped area." The report continues: "The proposal before the City is to subdivide the Laguna Terrace Mobile Home Park into 157 lots for residences and one lettered lot containing streets and other commonly owned areas of land (Exhibit #7). This subdivision would separate the developed mobilehome park portion of the subject 270 acre property, which the mobilehome park partly occupies, from the undeveloped portion, thus creating new undeveloped parcel(s). . . . [¶] Using the *Post LCP Certification Permit and Appeal Jurisdiction, City of Laguna Beach* Map ('post-cert map') adopted by the Commission on September 16, 1993, the subject 270 acre area is depicted as being partly within the City of Laguna Beach's coastal permit jurisdiction, and partly within an area of deferred

court) "act[s] as a Commission waiver, or estop[s] the Commission or result[s] in mootness with respect to the Commission's only finding in support of jurisdiction over the Tract Map CDP." We address both arguments, *post*.

13

certification (ADC) where the Commission retains direct coastal permitting authority . . . . Based on a graphic plotted on the proposed subdivision map, it appears that the area of land that the applicant is proposing to divide into 157 numbered lots and one lettered lot, would be within the area the post-cert map says is City jurisdiction. However, the remainder area (i.e. remainder lot) would be in the ADC. The proposed subdivision map, apparently assuming the validity of un-permitted lot line adjustments that occurred in 1995, depicts the remainder lot as a separate lot between the proposed mobilehome park subdivision and the rest of the 270 acre area. Commission staff maintains that the creation of the remainder lot would still require a coastal development permit directly from the Commission. Therefore, the City's approval only covers part of the land division and the applicant will need to apply to the Commission for a coastal permit to cover the remainder of the land division that is located in the ADC."

The report further states: "The legal status of division of the 270 acre area into various parcels is at the center of the debate about the appealability of the City's action. In 1995 there were two unpermitted, purported lot line adjustments recorded by the landowner(s) that substantially changed the configuration of lot lines within the subject 270 acre area, and resulted in the creation of new parcels of land having a greater potential for development than previously existed (Exhibit #3 & 4). Pursuant to Section 30600[, subdivision ](a) of the Coastal Act, any person wishing to perform or undertake non-exempt development in the coastal zone must obtain a coastal development permit, in addition to any other permit required by law." (Fn. omitted.) The report notes that the term "development," as defined by Public Resources Code section 30106, means "change in the density or intensity of the use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act . . . and any other division of land, including lot splits." (Boldface & underscoring omitted.)

The report further explains the 1995 lot line adjustments were "done without the benefit of any coastal development permit." The report concedes that "[i]f

14

these lot lines had all of the required Coastal Act authorization(s), the City's latest action may not have been appealable as the City had determined. However, since these lot lines have not received Coastal Act authorizations, the City's action is appealable because the City's action results in a division of land that changes the shape of, and intensity of use of, parcel(s) of land that is/are within 100 feet of a stream." (Fn. omitted.)

The report concludes, "Public Resources Code Section 30603[, subdivision ](a)(2) confers the Commission with appellate jurisdiction over development that is within 100 feet of any stream. The Commission finds that, because CDP application 09-36 seeks authorization for development within 100 feet of a stream identified on the City's post-cert map, approval of that application is appealable to the Commission pursuant to Section 30603[, subdivision ](a)(2) of the Coastal Act."

Citing *LT-WR, L.L.C. v. California Coastal Com.*, *supra*, 152 Cal.App.4th 770, the trial court upheld the Commission's determination of jurisdiction after concluding the Commission properly reviewed Laguna Terrace's application as proposing the development of a 270-acre parcel. The court explained the 1995 lot line adjustments to that parcel were unpermitted and thus must be ignored for purposes of evaluating the Commission's determination of its jurisdiction under the Coastal Act. In *LT-WR, L.L.C.*, *supra*, 152 Cal.App.4th at page 797, the appellate court held: "In order to enable the Commission to protect coastal resources, and to avoid condoning unpermitted development, the Commission properly reviewed the application as though the unpermitted development had not occurred."

Here, Laguna Terrace agrees the material facts are undisputed. The undisputed facts show that the mobilehome park, for the Coastal Act's purposes, is located on a 270-acre parcel that is within 100 feet of a stream. Hence, the Commission properly determined it had jurisdiction over the development of the mobilehome park, which, as discussed *ante*, includes an application proposing to convert the mobilehome park from tenant occupancy to resident ownership.

15

## C.

*The Trial Court Did Not Err by Refusing to Augment the Trial Court's Record with or Judicially Notice the City's Administrative Record.*

Laguna Terrace argues the trial court erred by denying its motion to augment the record with the City's administrative record and by denying the request that the court take judicial notice of that same record under Evidence Code section 452, subdivision (c).

"'The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency. [Citation.]' [Citation.] Augmentation of the administrative record is permitted only within the strict limits set forth in [Code of Civil Procedure] section 1094.5, subdivision (e) which provides as follows: 'Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.' (§ 1094.5, subd. (e); [citation].) In the absence of a proper preliminary foundation showing that one of the exceptions noted in section 1094.5, subdivision (e) applies, it is error for the court to permit the record to be augmented. [Citation.] Determination of the question of whether one of the exceptions applies is within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless it is manifestly abused." (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101.)

Evidence Code section 452, subdivision (c) provides that judicial notice *may* be taken of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." We review the trial court's

16

decision not to take judicial notice of the City's administrative record for an abuse of discretion. (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291.)

Laguna Terrace does not explain how the trial court's consideration of the City's administrative record would support its arguments on appeal, or show how any information contained in that record, but not also included in the Commission's administrative record, was relevant. Laguna Terrace does not explain that any such information was "'so persuasive'" that it was unreasonable for the court to have refused to consider it. (*Willis v. State of California*, *supra*, 22 Cal.App.4th at p. 291.) The Commission's staff report, which is contained in our record, states, "Commission staff requested the remainder of the City's record and requested that the applicant [(Laguna Terrace)] address the issues raised in the findings on substantial issue. However, the Commission has not received any of the documents requested." The record does not show that any information from the City's administrative record was improperly excluded from the Commission's administrative record by the Commission.

Furthermore, in light of Laguna Terrace's concession at oral argument that the facts relevant to the resolution of the issues on appeal are undisputed, we must conclude that even were we to assume the trial court abused its discretion in denying both the motion to augment and request for judicial notice, Laguna Terrace suffered no prejudice.

D.

*Laguna Terrace Has Withdrawn Its Argument the Trial Court Erred by Denying Its Request for a Statement of Decision.*

The trial court denied Laguna Terrace's request for a statement of decision "explaining the legal and factual bases for its decision as to each of the . . . principal controverted issues at trial with respect to both the First Cause of Action for Writ of Mandate and the Second Cause of Action for Declaratory and Injunctive Relief." In its opening brief, Laguna Terrace argues the trial court's "refusal to prepare a statement of

17

decision results in mandatory reversal." (See Code Civ. Proc., § 632 [upon the request of any party in a nonjury trial, the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues"].) Laguna Terrace had argued, in the appellant's opening brief, there were disputed issues of fact, namely, whether Laguna Terrace was located on a 270-acre parcel under the Coastal Act.

Since initial briefing was completed in this case, the California Supreme Court issued its opinion in *Pacific Palisades*, *supra*, 55 Cal.4th 783, which, for the reasons discussed *ante*, rejected the principal argument advanced by Laguna Terrace in its appellate briefs. Also, and as described in the second request for judicial notice filed by Laguna Terrace in this court, in June 2012, the Commission approved the 1995 lot line adjustments for which no CDP had been issued.

At oral argument, Laguna Terrace's counsel informed this court that Laguna Terrace has abandoned its argument that the judgment should be reversed for the trial court's failure to issue a statement of decision. In light of the postappellate briefing developments, described *ante*, we understand and respect Laguna Terrace's decision not to seek reversal of the judgment on the ground the trial court denied Laguna Terrace's request for a statement of decision but to instead focus on persuading this court to take judicial notice of recent events. We therefore do not further address whether the trial court was required, upon request, to issue a statement of decision as to any of Laguna Terrace's claims.

E.

*In Light of Our Rejection of Laguna Terrace's Challenges to the Judgment,*
*We Do Not Address the Commission's Arguments Pertaining to Whether*
*Laguna Terrace Failed to Exhaust All Required Administrative Remedies and*
*Whether Laguna Terrace's Challenges Are Ripe for Appellate Review.*

The Commission argues: "This case is premature and not ripe for judicial review" because "[t]he Commission's determination that the permit would be appealable

18

is just the first step in the administrative appellate process. All of the following must occur before a final Commission decision can be judicially reviewed: the City must make a final permit decision; someone must actually appeal that decision to the Commission; the Commission must determine whether to take jurisdiction over the appeal; and, if it does take jurisdiction, the Commission must consider the appeal de novo and approve or deny the permit. At this point, the Commission has not yet completed its de novo review of the appeal or acted on the permit application, therefore judicial review is simply premature."

Because we conclude Laguna Terrace's arguments are without merit for the reasons discussed *ante*, we do not need to address the Commission's exhaustion and ripeness arguments.

IV.

WE REJECT LAGUNA TERRACE'S REQUESTS FOR JUDICIAL NOTICE.

In its first request for judicial notice, Laguna Terrace requests that we judicially notice the City's certified administrative record on Laguna Terrace's application under Evidence Code sections 452 and 459, and make various factual findings under Code of Civil Procedure section 909. The Commission opposes this request. We reject Laguna Terrace's argument for the same reasons we conclude the trial court did not err by refusing to augment the trial court's record with or take judicial notice of the City's administrative record, discussed in part III.C. of the Discussion, *ante*.

In its second request for judicial notice, Laguna Terrace requests that we take judicial notice of documents attached to that request, which Laguna Terrace identifies as (1) "the January 15, 2013 recordation by the Orange County Recorder of the . . . 'Notice of Acceptance of Coastal Development Permit and Legality of Lot Line Adjustment'"; (2) the notice of acceptance itself; and (3) "the Adopted Findings attached to the Notice." Laguna Terrace also requests that we make certain factual findings, including that (1) "Coastal Development Permit No. 5-12-121 ('Permit') is for the

19

purpose of 'approving and ratifying that certain Lot Line Adjustment approved by the City of Laguna Beach on March 23, 1995, and referred to as LL 95-01, and recorded in the Official Records of the County of Orange on November 22, 1995, as document number 19950520276'"; (2) "[r]ecordation of the Notice obligates [the Commission] to issue the Permit to [Laguna Terrace] and other Permit applicants"; and (3) "[t]he Commission found with respect to the Permit that it constitutes a 'waiver of any legal action' with regard to 'the alleged violation concerning City of Laguna Beach Lot Line Adjustment LL 95-01.'" Laguna Terrace asserts, "[j]udicial notice of this matter is relevant to the appeal because, upon recordation of the Notice, the Commission is obligated to issue the Permit, thereby rendering moot the sole legal basis (*i.e.*, the lack of a coastal development permit for LL 95-01) for which the Commission asserted jurisdiction over the subject City of Laguna Beach Coastal Development Permit No. 10-26 for the Laguna Terrace Park tentative tract map." The Commission opposed the request for judicial notice.

As discussed *ante*, Laguna Terrace and the Commission agree the issue regarding whether the Commission lawfully has jurisdiction over Laguna Terrace's application was *not* mooted by those subsequent events or by the California Supreme Court's recent decision in *Pacific Palisades*, *supra*, 55 Cal.4th 783.

In this appeal, we are reviewing the issue whether the Commission properly determined that it had jurisdiction over the proposed conversion of the Laguna Terrace mobilehome park. Laguna Terrace does not explain how anything that has happened since the Commission's jurisdiction determination sheds any light on the propriety of that determination, on the record before the Commission, when it was made. Accordingly, we decline to needlessly interfere with the ongoing proceedings in this action by considering matters outside the limited issues presented in this appeal. We therefore deny Laguna Terrace's second request for judicial notice.

20

## DISPOSITION

The judgment is affirmed.  Respondent California Coastal Commission shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.