[No. A125614. First Dist., Div. Three. Mar. 25, 2010.]

GUALALA FESTIVALS COMMITTEE, Plaintiff and Appellant, v. CALIFORNIA COASTAL COMMISSION et al., Defendants and Respondents.

COUNSEL

Paul J. Beard II, Damien M. Schiff and Antonio J. Senagore for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, John A. Saurenman, Assistant Attorney General, Christiana Tiedemann and Joseph C. Rusconi, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**POLLAK, Acting P. J.**—Plaintiff Gualala Festivals Committee (the Festivals Committee) appeals from a judgment denying its petition for a writ of mandate seeking to set aside a cease-and-desist order entered by the California Coastal Commission (the Commission). The Commission's order prohibits the Festivals Committee from discharging fireworks over the Gualala River estuary without first obtaining a coastal development permit. The Festivals Committee contends the trial court erred in upholding the Commission's determination that a permit is required because the fireworks display is a development within the meaning of the California Coastal Act of 1976 (Pub. Resources Code,[1] § 30000 et seq.) (the Act). Although such a display may not be a "development" in the ordinary sense of the word, the Commission's interpretation conforms both with the expansive statutory definition of the term and the purpose of the statute. Hence we shall affirm the trial court's judgment upholding the Commission's action.

### Factual and Procedural History

The Festivals Committee is an association of business and property owners in Gualala that sponsors community events, including Gualala Patriot Days over the Fourth of July weekend. In 2006, the Festivals Committee added a 15-minute fireworks display to the Patriot Days event. The fireworks were launched from private property situated near the Gualala River estuary and Gualala Point Island. Following the 2006 display, the Commission received telephone complaints that the fireworks had disturbed seabirds nesting on Gualala Point Island.

On June 13, 2007, the Commission wrote a letter to the Festivals Committee stating, "It has come to the attention of Coastal Commission staff that the Gualala Festivals Committee . . . is planning a fireworks display scheduled to take place on July 6, 2007 at 9:15 p.m. We understand that the proposed

---

[1] All statutory references are to the Public Resources Code unless otherwise noted.

fireworks would be launched from within, or partially within, the public access easement held by the Redwood Coast Land Conservancy . . . and would detonate over the Gualala River estuary. [¶] Commission staff believes that (1) launching fireworks from within the public access easement is inconsistent with the terms and conditions of the easement, (2) the proposed fireworks display above the Gualala River estuary is a form of 'development' as defined by the Coastal Act Section 30106 and requires a coastal development permit, and (3) the proposed fireworks display does not qualify as a temporary event exempt from permit requirements because of its potential for adverse impacts to coastal resources." The Commission elaborated on the environmental concerns posed by the fireworks display. "The site of the proposed fireworks display is located approximately one mile from Gualala Point Island which provides nesting and roosting habitat for a variety of seabirds. We understand that a similar fireworks display conducted in 2006 over the Gualala River estuary without the benefit of a coastal development permit resulted in documented disturbance of seabird roosts and rookeries, including observed nest abandonment by several bird species. The Gualala River estuary also provides harbor seal haul-out sites as well as habitat for other marine mammals. Therefore, because the proposed fireworks display would be located in close proximity to known environmentally sensitive habitat areas . . . and has the potential for significant adverse impacts . . . , the Executive Director has determined that the proposed temporary event is not excluded from [the coastal development permit] requirements."

In response, the Festivals Committee assured the Commission that the fireworks display would not be launched from the public easement, and public access to the easement would not be blocked during the fireworks display. The Festivals Committee disputed the Commission's claim that its fireworks display is a "development" within the meaning of the Act and questioned whether there was any evidence of the alleged disturbance of seabird roosts and rookeries. The Commission advised the Festivals Committee that in light of its assurance that the public easement would not be blocked during the display, the Commission would not issue a cease-and-desist order with respect to the 2007 fireworks display. The Commission explained, however, that it considered the fireworks display a development that required a permit and that if the Festivals Committee intended to conduct a similar display the following year a permit application should be filed no later than February 2008. The Commission warned that by not obtaining a permit, the Festivals Committee would be proceeding at its own risk should the fireworks display result in nest abandonment and mortality of seabirds. The Festivals Committee was advised that the federal Bureau of Land Management would be implementing a monitoring protocol to determine whether the 2007 display adversely impacted the nesting seabirds.

On February 12, 2008, the Bureau of Land Management and the federal Fish and Wildlife Service issued a report entitled "Seabird and Marine Mammal Monitoring and Response to a Fireworks Display at Gualala Point Island, Sonoma County, California, May to August 2007." The report documents "a visible response by nesting seabirds on Gualala Point Island. Digiscoped and infra-red photography during the 6 July fireworks display showed that Brandt's Cormorants quickly changed from resting to erect postures at the first fireworks, followed by birds moving about or departing from the island. . . . During the study period, 90 Brandt's Cormorant nests were documented on Gualala Point Island. Of these, seven nests (35% of nest failures) were abandoned in the two days between 5 and 7 July, and another seven nests were abandoned between 7 and 12 July. Those losses contrast with the abandonment of only six nests (30% of nest failures) for the 30-day period from 5 June to 5 July." The report concludes that the high rate of Brandt's Cormorants nest abandonments "likely resulted from fireworks disturbance."

On May 28, 2008, the Commission was notified that the Festivals Committee was planning another fireworks display during the Fourth of July weekend. On April 1, the Commission notified the Festivals Committee of its intent to issue a cease-and-desist order prohibiting it from conducting any unpermitted development within its jurisdiction, including the proposed fireworks display. A hearing on the proposed cease-and-desist order was set before the Commission for June 11, 2008.

On May 29, 2008, the Festivals Committee initiated the present action against the Commission and Peter Douglas, in his capacity as the executive director of the Commission, by filing a complaint for declaratory and injunctive relief seeking to prohibit the Commission from issuing the proposed order. At the June 11 hearing, the Commission asserted jurisdiction over the fireworks display and issued a cease-and-desist order prohibiting the Festivals Committee "from undertaking or threatening to undertake development without the necessary coastal development permit, including but not limited to, conducting a fireworks display over the Gualala River estuary." Thereafter, the Festivals Committee filed an amended complaint for declaratory relief and petition for writ of administrative mandate challenging the Commission's jurisdiction over the fireworks display. On May 11, 2009, the trial court denied the Festivals Committee's writ petition and on June 1 entered judgment in favor of the Commission. The court held that the proposed fireworks display is a "development" within the meaning of the Act and that the Commission, therefore, had jurisdiction to require a permit and to issue the cease-and-desist order. The court also found that substantial evidence supports the Commission's findings that (1) the 2007 fireworks display resulted in the closure of a public access trail during the time that it was to remain open; (2) the 2007 fireworks display resulted in placement of

debris on areas of the public easement that remained after the conclusion of the display; and (3) the 2007 fireworks display had adverse impacts on nesting seabirds. The Festivals Committee filed a timely notice of appeal.

## Discussion

Section 30600, subdivision (a) of the Act provides: "Except as provided in subdivision (e), and in addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency, any person . . . wishing to perform or undertake any *development* in the coastal zone, . . . shall obtain a coastal development permit." (Italics added.) Section 30106 of the Act defines "development" as follows: " 'Development' means, on land, in or under water, the placement or erection of any solid material or structure; discharge or disposal of any dredged material or of any gaseous, liquid, solid, or thermal waste; grading, removing, dredging, mining, or extraction of any materials; change in the density or intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act (commencing with Section 66410 of the Government Code), and any other division of land, including lot splits, except where the land division is brought about in connection with the purchase of such land by a public agency for public recreational use; change in the intensity of use of water, or of access thereto; construction, reconstruction, demolition, or alteration of the size of any structure, including any facility of any private, public, or municipal utility; and the removal or harvesting of major vegetation other than for agricultural purposes, kelp harvesting, and timber operations which are in accordance with a timber harvesting plan submitted pursuant to the provisions of the Z'berg-Nejedly Forest Practice Act of 1973 (commencing with Section 4511). [¶] As used in this section, 'structure' includes, but is not limited to, any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line." The parties agree that the scope of the Commission's jurisdiction turns on the proper interpretation of "development" as defined in the Act.

"Where jurisdiction involves the interpretation of a statute, the issue of whether an agency acted in excess of its jurisdiction is a question of law reviewed de novo on appeal. [Citations.] Moreover, courts do not defer to an agency's determination when deciding whether the agency's action lies within the scope of authority delegated to it by the Legislature." (*Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098, 1106 [85 Cal.Rptr.3d 909].) Nonetheless, although final responsibility for interpreting the statute resides in the courts, the agency's interpretation of its governing statute is entitled to "great weight." (*La Fe, Inc. v. County of Los Angeles* (1999) 73 Cal.App.4th 231, 240 [86 Cal.Rptr.2d 217]; *Coronado Yacht Club v. California Coastal Com.* (1993) 13 Cal.App.4th 860, 868 [17 Cal.Rptr.2d 10].)

■ "When we interpret the meaning of statutes, our fundamental task is to ascertain the aim and goal of the lawmakers so as to effectuate the purpose of the statute. We begin by examining the statutory language, giving the words their usual and ordinary meaning. If we find no ambiguity, we presume that the lawmakers meant what they said, and the plain meaning of the language governs. [Citation.] If, on the other hand, the statutory language is unclear or ambiguous and permits more than one reasonable interpretation, we may consider various extrinsic aids to help us ascertain the lawmakers' intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. [Citation.] In such circumstances, we must select the construction that comports most closely with the aim and goal of the Legislature to promote rather than defeat the statute's general purpose and avoid an interpretation that would lead to absurd and unintended consequences. [Citation.] [¶] ■ When a provision of the Coastal Act is at issue, we are enjoined to construe it liberally to accomplish its purposes and objectives, giving the highest priority to environmental considerations." (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 928 [87 Cal.Rptr.3d 365].)

■ We do not question that a fireworks display is not what is commonly regarded as a development of real property. Nonetheless, the Act does not simply use the term "development," leaving the Commission and the courts to ascertain its meaning from common usage. Rather, the statute provides an expansive definition of the activities that constitute development for purposes of the Act. It is the language of that definition that must be applied and interpreted, giving the words "their usual and ordinary meaning." (Cf., e.g., *LT-WR, L.L.C. v. California Coastal Com.* (2007) 152 Cal.App.4th 770, 776, 804–805 [60 Cal.Rptr.3d 417] [installation of gates with "no trespassing" signs is development]; *La Fe, Inc. v. County of Los Angeles, supra,* 73 Cal.App.4th 231, 239–240 [lot line adjustment is development]; *Stanson v. San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 47–48 [161 Cal.Rptr. 392] [remodel of existing structure is development]; *California Coastal Com. v. Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 605–609 [170 Cal.Rptr. 263] [conversion of existing apartments into a stock cooperative is development]; *Monterey Sand Co. v. California Coastal Com.* (1987) 191 Cal.App.3d 169, 176 [236 Cal.Rptr. 315] [offshore sand extraction is development].)

At the hearing before the Commission, staff reported the following information with respect to the debris that results from a fireworks display: "Aerial shells are launched from tubes (called mortars), using black powder charges, to altitudes of 200 to 1000 feet where they explode and ignite internal burst charges and incendiary chemicals. Most of the incendiary elements and shell casings burn up in the atmosphere; however, portions of

the casings and some internal structure components and chemical residue fall back to the ground or water, depending on prevailing winds." The Redwood Coast Land Conservancy confirmed that following the 2007 display, its members removed fireworks debris from the Gualala Bluff Trail. This evidence supports the finding that the 2007 fireworks display resulted in placement of solid debris within the coastal zone. The report prepared by the Bureau of Land Management quoted above amply supports the finding that the 2007 fireworks display had adverse impacts on nesting seabirds.[2]

■ The trial court found that the proposed fireworks display is a development within the meaning of the statute because it would result in the discharge of solid and chemical waste within the coastal zone. We agree. Section 30106 includes within the definition of development, bringing within the Commission's jurisdiction, the "discharge . . . of *any* gaseous . . . [or] solid . . . waste." The statute does not require that a minimum amount of waste be discharged to qualify as a development. Thus, a fireworks display that produces both solid and gaseous waste, as the Festivals Committee acknowledges occurs from its display, is a development under the plain language of the Act.

■ The Festivals Committee argues that this "literal construction is fatally flawed" and that to avoid absurd results the term "development" must be construed to imply two limitations: "First, an activity must itself physically alter—or be a necessary precondition to an activity that physically alters—land or water within the coastal zone. Second, the physical alteration cannot merely be ephemeral; it must be long-lasting, if not permanent." The Festivals Committee cites no authority recognizing such conditions and section 30106 does not expressly or implicitly impose such limitations. To the contrary, the statutory scheme implies that permanent alteration to land or water is not a defining characteristic of development under the Act. Section 30610 provides in relevant part, "Notwithstanding any other provision of this division, no coastal development permit shall be required pursuant to this chapter for the following types of development . . . : [¶] . . . [¶] (i)(1) Any proposed development which the executive director finds to be a temporary event which does not have any significant adverse impact upon coastal

---

[2] The trial court also found, based on statements made by representatives of the Redwood Coast Land Conservancy, that public access to the easement was limited during the 2007 show. The Festivals Committee argues that irrespective of past displays, the undisputed evidence establishes that all future fireworks displays would be organized so as not to interfere with public access to the easement. Because we conclude that the displays come within the Commission's jurisdiction on other grounds, we need not decide whether the potential restriction of public access to the easement provides an additional basis for deeming the displays to be a development because they result in a "change in the density or intensity of use of land."

resources within the meaning of guidelines adopted pursuant to this subdivision by the commission." ■ Section 30624.7 authorizes the executive director to issue "waivers from coastal development permit requirements for any development that is de minimis" and defines "de minimis" as a development that "involves no potential for any adverse effect, either individually or cumulatively, on coastal resources." Thus, temporary or de minimis activity that does not adversely impact coastal resources is characterized in the statute as "development" but may be exempted from the permit requirement. These provisions necessarily imply that an activity need not be long lasting to qualify as a development subject to the Commission's jurisdiction, although the Commission has the authority to exempt such development from the permit requirement.[3]

This interpretation is consistent with the purpose of the Act. The Act "was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. The Legislature found that 'the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people'; that 'the permanent protection of the state's natural and scenic resources is a paramount concern'; that 'it is necessary to protect the ecological balance of the coastal zone'[4] and that 'existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state . . . .' " (*Yost v. Thomas* (1984) 36 Cal.3d 561, 565 [205 Cal.Rptr. 801, 685 P.2d 1152]; see § 30001.) One of the legislative goals of the Act is to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources." (§ 30001.5, subd. (a).) Construing the Act to provide the Commission with both expansive jurisdiction to control even limited, temporary development and the authority to exempt from the permit process development that does not

---

[3] The Festivals Committee offers the following hypothetical examples to demonstrate the "absurd results" that supposedly flow from a literal interpretation of the statute: "Even the mere act of breathing would be classified as a 'development' under the Commission's approach, because breathing literally involves the 'discharge . . . of . . . gaseous . . . waste' (carbon dioxide) into the air" and "everyday activities such as opening a beach umbrella or driving an automobile [could require] coastal permits." The exemption and waiver provisions, however, avoid the Festivals Committee's hypothetical absurdities. Presumably someone who breathes or opens an umbrella on the beach will not cause a "*significant* adverse impact upon coastal resources" and thus will not be subject to a permit requirement. The Commission has enacted regulations relating to de minimis developments (Cal. Code Regs., tit. 14, § 13238 et seq.) and in 1993 issued Guidelines for the Exclusion of Temporary Events from Coastal Commission Permit Requirements.

[4] Section 30001, subdivision (c) reads in full: "That to promote the public safety, health, and welfare, and to protect public and private property, wildlife, marine fisheries, and other ocean resources, and the natural environment, it is necessary to protect the ecological balance of the coastal zone and prevent its deterioration and destruction."

have "any *significant* adverse impact upon coastal resources" provides the Commission the necessary flexibility to manage the coastal zone environment so as to accomplish the statutory purposes. By recognizing the Commission's jurisdiction in this case, the Commission may protect not only natural and scenic coastal resources from litter and gaseous waste, but resident wildlife from adverse impacts. "The [A]ct is to be liberally construed to accomplish its purposes and objectives." (*La Fe, Inc. v. County of Los Angeles, supra*, 73 Cal.App.4th at p. 235.) "Such a broad interpretation is consistent with the legislative policy of the Act found in section 30001.5 and the broad grant of power to the agency to adopt any regulation or take any action it deems reasonable and necessary to carry out its provisions. (§ 30333.)" (*Stanson v. San Diego Coast Regional Com., supra*, 101 Cal.App.3d at p. 47.)

The record contains evidence of the Commission's varying treatment of fireworks displays in other coastal locations, and this history demonstrates how the Commission's interpretation of its authority has been used to accomplish the purposes of the Act. For example, the Commission has previously required and approved a coastal development permit for the temporary closure of Seacliff State Beach for a fireworks display; the permit included provisions for wildlife monitoring and imposed cleanup requirements. With respect to a fireworks display in the City of Morro Bay, the city worked with the Commission to alleviate potential impacts to coastal resources so that the display would qualify for the permit exemption for temporary developments. The Festivals Committee reports that the Commission allowed Sea World to launch 150 fireworks displays a year over Mission Bay Park without a permit. The Festivals Committee acknowledges, however, that the Commission expressly indicated that the displays would be "re-evaluated" in five years "[d]ue to the potential, but undocumented adverse impacts to water quality, air quality and biological resources associated with the fireworks displays."

■ In this appeal, the Festivals Committee has not challenged the Commission's finding that the proposed fireworks display would cause significant adverse impacts upon coastal resources, nor does it contend that, assuming jurisdiction, the Commission abused its discretion in denying a permit exemption or waiver on this basis. Since we conclude that the Commission had jurisdiction over the proposed fireworks display and did not exceed its jurisdiction in requiring the Festivals Committee to obtain a permit to conduct such a display, the trial court properly denied the requested writ of mandate to set aside the Commission's cease-and-desist order.

## Disposition

The judgment is affirmed.

Siggins, J., and Jenkins, J., concurred.

A petition for a rehearing was denied April 13, 2010, and appellant's petition for review by the Supreme Court was denied June 9, 2010, S182328.