Filed 11/19/13  In re N.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.D., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  P.M.,  Defendant and Appellant. | E057468  (Super.Ct.No. J245908)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

At a jurisdiction hearing, the juvenile court (1) found N.D. came within the court's jurisdiction, and (2) terminated the guardianship that defendant and respondent P.M. (Grandmother) had over N.D. The guardianship had been granted by the probate court. Grandmother contends (1) the juvenile court acted in excess of its jurisdiction by terminating the guardianship established by the probate court, (2) substantial evidence does not support the court's best interests finding, and (3) the juvenile court misapplied the "best interests" standard. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

N.D. is male and was born in 2010. A.D. (Mother) is N.D.'s mother. Grandmother is N.D.'s maternal grandmother. N.D.'s alleged father's whereabouts are unknown. The probate court granted Grandmother legal guardianship of N.D. when N.D. was five months old. Grandmother is also the guardian of a second ward, X.M., who is male and was born in 1999.

On August 6, 2012, one of Grandmother's grandchildren, I.D., was visiting Grandmother. I.D. is female and was approximately four years old in 2012. Grandmother left X.M., N.D., and I.D. at home while she ran an errand. When Grandmother called to check on the children, X.M. informed Grandmother that I.D. placed her mouth on N.D.'s genitals. Grandmother immediately returned home.

I.D. denied touching N.D. It was eventually revealed that X.M. placed his penis in I.D.'s mouth and anus. X.M. admitted to Grandmother that he had sexual contact with I.D. In response, Grandmother beat "the hell out of" X.M. Grandmother admitted that she "almost really hurt" X.M. Grandmother's friend separated Grandmother and

2

X.M., and Grandmother called 911 to report the incident. Grandmother's friend stayed in the bathroom with X.M. while Grandmother tried to "figure it out." The police transported X.M. to a juvenile detention center in Apple Valley.

On September 4, Grandmother was arrested for identity theft (Pen. Code, § 530.5, subd. (a)), burglary (Pen. Code, § 459), check forgery (Pen. Code, § 470, subd. (d)), and forging an official seal (Pen. Code, § 472). A social worker from plaintiff and respondent San Bernardino County Children and Family Services (the Department) spoke to Grandmother at the jail. Grandmother explained to the social worker that she was arrested because she tried to cash a check that did not belong to her. Grandmother said she needed the money in order to purchase a gun to protect herself and X.M. from I.D.'s father, who wanted to hurt X.M. for sexually abusing I.D.

Grandmother admitted the allegations against X.M. were true, but placed the blame for the incident on I.D. Grandmother explained that I.D. "'enticed [X.M.] with her body.'" Grandmother insisted X.M.'s sexual contact with I.D. "'was not a crime.'" The social worker asked Grandmother where N.D. could be found. Grandmother said he was with his godparents. Grandmother disclosed the godmother's first name and that the godparents lived in San Bernardino. Grandmother said she did not know the godparents' address, phone number, or the godmother's surname. Grandmother gave the social worker Mother's contact information. Mother gave the social worker N.D.'s godparents' contact information. The Department decided to detain N.D. N.D. was placed in foster care.

3

Grandmother had been diagnosed as bipolar. Grandmother had been prescribed three medications for her mental illness. The medications can control her illness; however, Grandmother does not consistently take the medications due to "issues with the mental health department" and lack of insurance. Grandmother smokes medical marijuana three times per day in order to "slow [her] brain down." Grandmother explained that "sometimes [her] thinking starts thinking too fast, and it's overwhelming," so the medical marijuana helps.

When a social worker asked Mother about Grandmother's mental health issues, Mother said: "'[X.M.] was suicidal a couple of times when I was staying there and he said [Grandmother] was like a black cloud over his head every time she came home.' Mother reported, '[Grandmother] is verbally abusive; we know she loves us and wants to take care of us, but sometimes it's too much. . . . [M]other stated, 'The last time she put me out she said she wanted to kill [Mother] and [X.M.] said she always tells him that.'" Mother opined that X.M. may have learned about sexual contact because Grandmother dated a man that molested Grandmother's niece. Mother was unsure if the man "did anything" to X.M.

Mother explained that when she returned home from serving in the air force, Grandmother was going through a divorce and Grandmother suffered a bullet graze along her temple. Mother said Grandmother "'has not been the same since.'" Mother believed Grandmother had been involved with street gangs, i.e. "'gang banging,'" since the divorce.

Mother admitted a history of alcohol abuse. Mother last used alcohol in January 2012. N.D. was conceived with a staff member while Mother was an inpatient at Inland Valley Recovery Program. In September 2012, Mother was in the process of obtaining housing through the Veteran's Administration. Mother was residing at the Life Community Development Program for Veterans. Mother was also in the process of obtaining intensive counseling through the Veteran's Administration. Mother was taking seven different medications for her mental health issues.

The Department filed a petition on behalf of N.D. alleging (1) Grandmother failed to protect N.D. because she did not provide a safe and appropriate environment; (2) Grandmother failed to protect N.D. by engaging in criminal activity; (3) Grandmother suffers from unresolved mental health issues that negatively impact her ability to provide for N.D.'s wellbeing; (4) X.M. sexually abused I.D., and Grandmother's response to the abuse and assignment of blame placed N.D. at risk of similar abuse; and (5) Grandmother failed to protect N.D. because she did not disclose his whereabouts to the Department. On September 19, 2012, the Department filed a motion for the juvenile court to terminate Grandmother's probate guardianship over N.D.

At the jurisdiction hearing on October 19, the Department asserted terminating the guardianship was in N.D.'s best interests and reasoned, "We should not be dividing our efforts in this particular case. The mother is doing really well right now. We are hoping that she will be able to reunify. We should not be trying to reunify with Grandmother who has all these issues, and at the same time trying to reunify with Mom.

5

I just don't see that that's a good option in this case. [¶] Grandmother focuses attention elsewhere, not on this child. We have no objection to her visiting the child. She can maintain her relationship as the grandmother, but as far as maintaining the guardianship, we would ask the Court to find it's not in the best interest of the child."

N.D.'s attorney also asked the court to terminate the guardianship. N.D.'s counsel asserted Grandmother would be working on a reunification plan with X.M. and it would not be safe for X.M. and N.D. to be in the same home, because N.D. is too young to protect himself. Counsel argued, "I think it's clear that [N.D.] is not safe there. And it's more appropriate to terminate that guardianship at this time." Mother agreed with the recommendation that the guardianship be terminated.

Grandmother's attorney said, "[W]e're not really saying the Court should not take jurisdiction under something here, we're just asking that, you know, she still be considered for guardianship if the mother does not do the right thing. [¶] We're in favor of the mother getting her kid back. That's not our problem. We are not saying one bad thing about the mother. All we're saying is, look, she's the guardian for two and a half years. The mother is going to get services to try to get the kid back. God hope that she is successful, but if she is not successful, what are we going to do with the kid?"

The juvenile court found true the following three allegations: (1) Grandmother has unresolved mental health issues that negatively impact her ability to provide for N.D.'s wellbeing; (2) Grandmother failed to protect N.D. by allowing X.M. to sexually abuse I.D. and placing the blame for the sexual abuse on I.D., thus placing N.D. at risk

6

for similar abuse; and (3) Grandmother failed to protect N.D. by refusing to disclose his whereabouts.

The court ordered N.D. be removed from Grandmother's physical custody. The court found there would be a substantial danger to N.D.'s physical health if he were left in Grandmother's custody. The court also found placement with Mother would be detrimental. Thus, N.D. was continued in foster care. The court then said, "The Court finds that it is in the best interest of the child to terminate the legal guardianship with the grandmother. As such the Court does not order services to the grandmother." The court ordered reunification services for Mother. Grandmother was granted visitation with N.D. dependent on the availability of the social worker and foster parent(s).

## DISCUSSION

### A.    EXCESS OF JURISDICTION

#### 1.    CONTENTION

Grandmother contends the juvenile court acted in excess of its jurisdiction by terminating the probate guardianship because the proper procedures were not followed. (Welf. & Inst. Code, § 728.)[1] Grandmother asserts the following procedural errors occurred:  (1) the probate court was not notified of the juvenile court's decision to terminate the guardianship, (2) notice of the motion to terminate was not given to the alleged father, siblings, grandparents, and others, (3) notice was not given 45 days

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

7

before the hearing, and (4) the social worker did not recommend termination prior to filing the motion for termination.[2]

2. *STANDARD OF REVIEW*

We apply the de novo standard of review. When interpreting statutes, if the statutory language is not ambiguous, then the plain meaning of the language governs. (*Gualala Festivals Committee v. California Coastal Commission* (2010) 183 Cal.App.4th 60, 66-67.)

3. *SECTION 728*

A juvenile court has the authority to terminate a probate guardianship if the minor is the subject of a section 300 petition. (§ 728, subd. (a).) The termination ruling should be preceded by a noticed motion. (§ 728, subd. (a).) If the juvenile court terminates a probate guardianship, then the juvenile court shall provide notice of the ruling to the probate court. (§ 728, subd. (b).) Notice of the motion must be given to the mother, presumed and alleged fathers, the child if the child is 10 years old or older, any known siblings of the child, the grandparents of the child, all counsel of record, any unknown parent, and the child's foster parents. (§§ 294, subd. (a), 728, subd. (a).) Notice must be given at least 45 days before the hearing date.[3] (§ 294, subd. (c)(1).)

---

[2] The Department contends Grandmother forfeited this issue by failing to raise it in the juvenile court. We choose to address the merits of Grandmother's contention because it is easily resolved.

[3] The Welfare and Institution Code statutes require 45 days notice for terminating a guardianship. (Welf. & Inst. Code, §§ 294, subd. (c)(1), 728, subd. (a).) The California Rules of Court and Probate Code require only 15 days notice in relation

*[footnote continued on next page]*

## 4. *PROCEDURAL ERRORS*

First, we address Grandmother's concern about notifying the probate court. Section 728, subdivision (b) provides, "If the juvenile court decides to terminate or modify a guardianship previously established under the Probate Code pursuant to subdivision (a), the juvenile court shall provide notice of that decision to the court in which the guardianship was originally established." The plain language of the statute reflects notice must be given to the probate court *after* the juvenile court renders its ruling. It is notice of the rendered decision that must be given—not notice of a possible decision. Accordingly, we disagree that failure to notify the probate court would have affected the juvenile court's jurisdiction at the hearing, since notification to the probate court would have occurred after the hearing.

Second, we examine to whom the notice was given. The motion to terminate the guardianship was served on N.D.'s attorneys, Grandmother's attorneys, and Mother's attorneys. Section 294, subdivision (a), requires notice to be served on "[a]ll counsel of record," in addition to the mother, grandparents, siblings, foster parent(s), and presumed and alleged fathers. In the instant case, notice was served only upon the counsel of record. It does not appear notice was given to the paternal grandparents (if their

---

*[footnote continued from previous page]*
to terminating a guardianship. (Prob. Code, § 1511, subd. (a); Cal. Rules of Court, rule 5.620(e)(1).) To the extent there is a legal problem here, we need not resolve it for purposes of this opinion. For the sake of thoroughly addressing Grandmother's argument, we will present the rule as requiring 45 days notice.

whereabouts were known), the foster parents, or Mother and Grandmother as individuals—as opposed to their attorneys. Thus, notice was not given as required.

Third, we consider the timing of the notice. The motion was filed with the juvenile court and placed in the U.S. mail on September 19, 2012. The notice was not timely because there are not 45 days between September 19 and October 19, when the hearing took place.

The fourth error alleged by Grandmother is that the social worker did not recommend termination prior to filing the motion for termination. In *In re Angel S.* (2007) 156 Cal.App.4th 1202, 1207 (*Angel S.*), the appellate court described guardianship termination as a two-step procedure: (1) the social worker recommends termination to the juvenile court, and (2) a motion to terminate is filed. We note California Rules of Court, rule 5.620(e), provides: "*If* the social worker recommends to the court . . . that an existing guardianship be modified or terminated . . . ." (Italics added.) Given the "if" language, we will reserve deciding whether we agree with the *Angel S.* conclusion that there is a required two-step procedure. For the sake of judicial efficiency and thoroughly addressing Grandmother's contention, we will assume, without deciding, that the court erred by ruling on the motion for termination without previously receiving a recommendation from the social worker.

### 5. *LAW CONCERNING JURISDICTION*

Grandmother asserts these procedural errors caused the juvenile court to act in excess of its jurisdiction when it terminated the guardianship. "'In its fundamental sense, "jurisdiction" refers to a court's power over persons and subject matter.

10

[Citation.] Less fundamentally, "jurisdiction" refers to a court's authority to act with respect to persons and subject matter within its power. [Citation.] Issues relating to jurisdiction in its fundamental sense indeed may be raised at any time. [Citations.] By contrast, issues relating to jurisdiction in its less fundamental sense may be subject to bars including waiver . . . [citation] and forfeiture . . . [citation].' [Citation.] 'The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional.' [Citation.] The latter two categories in particular can give rise to acts by the court in excess of jurisdiction, i.e., acts which do not comply with a particular statutory procedure or applicable rules. [Citation.] Acts in excess of jurisdiction are not void in any fundamental sense but are, at most, voidable if properly raised by an interested party. [Citations.]" (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1209.)

### 6. *FUNDAMENTAL JURISDICTION*

In Grandmother's Appellant's Opening Brief, she is focused on the fundamental jurisdictional authority of the court. Grandmother contends the dependency court "is a court of limited jurisdiction[, which] can only make the limited determinations authorized by the legislative grant of special powers under the Welfare and Institutions Code . . . ." Grandmother asserts the failure to comply with the notice provisions "left the court without the authority to act."

11

Contrary to Grandmother's position, section 728, subdivision (a), provides: "The juvenile court may terminate or modify a guardianship of the person of a minor previously established under the Probate Code, or appoint a coguardian or successor guardian of the person of the minor, if the minor is the subject of a petition filed under Section 300, 601, or 602." The plain language of the statute grants the juvenile court the authority to terminate a guardianship established in the probate court. The statute then goes on to identify the procedures a juvenile court must follow when terminating a probate guardianship, but the authority to terminate the guardianship exists outside of those procedures. In other words, the first sentence of the statute establishes the juvenile court's authority, while the rest of the statute describes the procedures for exercising that authority. As a result, the juvenile court's fundamental authority to terminate a probate guardianship is not dependent on the procedural rules being followed—the authority and procedure are not intertwined. Accordingly we conclude the court had fundamental authority to terminate the guardianship.

7. *DUE PROCESS*

In Grandmother's Appellant's Reply Brief, she alludes to being personally harmed by the procedural failings. Grandmother writes, "a probate guardian such as [Grandmother] will always be prejudiced by not having the full 45 day statutory period to prepare for the hearing." Failure to follow proper notice procedures can compel reversal when a party is denied notice and asserts her right to notice of the proceedings. (*Angel S.*, *supra*, 156 Cal.App.4th at p. 1210.)

It does not appear Grandmother was given notice; however, her attorney was notified. For the sake of judicial efficiency, we will assume this was error. A lack of notice is subject to harmless error review. (See *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [lack of notice for a continued termination hearing is subject to harmless error review].) We consider whether the error was harmless beyond a reasonable doubt. (*Id.* at pp. 394-395.)

Grandmother's attorney was notified of the hearing. Grandmother appeared at the hearing with her attorney. Grandmother testified at the hearing. Grandmother's attorney argued against terminating the guardianship. It appears from the record that Grandmother was prepared for the hearing and was able to present her arguments concerning the termination motion. Grandmother does not explain what she would have done differently if the errors had not occurred. Grandmother only asserts people are always prejudiced when given inadequate notice. Since Grandmother does not explain what, if anything, would have been different if the errors did not occur, and it appears from the record Grandmother adequately presented her arguments, we conclude the errors were harmless beyond a reasonable doubt.

### 8. *CONCLUSION*

There is no basis to reverse the juvenile court's order terminating the probate guardianship because (1) the juvenile court had the fundamental authority to terminate the guardianship, and (2) the procedural errors were harmless to the extent they personally impacted Grandmother. (See generally *Angel S.*, *supra*, 156 Cal.App.4th at p. 1210 [similar conclusion].)

B.    BEST INTERESTS

Grandmother contends substantial evidence does not support the juvenile court's finding that termination of the guardianship was in N.D.'s best interests.

"The sole criterion for termination of a probate guardianship is whether termination is in the minor's best interests.  [Citation.]  We review a juvenile court's order terminating a probate guardianship under the substantial evidence standard.  [Citation.]" (*In re Xavier R.* (2011) 201 Cal.App.4th 1398, 1416.)  Under this standard, we view the evidence in the light most favorable to the judgment, resolve all disputes in favor of the judgment, and draw all reasonable inferences in support of the judgment. (*Ibid.*)

Grandmother testified that she is bipolar and does not consistently take her medication.  Grandmother said at times her "thinking starts thinking too fast, and it's overwhelming."  When Grandmother learned about X.M. sexually abusing I.D., Grandmother "started beating the hell out of him."  Grandmother admitted she "almost really hurt [X.M.]"  Grandmother had to be stopped by a friend who was visiting the house.  While Grandmother admitted the sexual abuse allegations against X.M. were true, she blamed the four-year-old victim for "enticing" X.M. and insisted X.M.'s actions did not constitute a crime.

The foregoing is substantial evidence supporting the findings that (1) Grandmother suffers unresolved mental health issues because she is inconsistent with her medication and suffers overwhelming thoughts, and (2) Grandmother responded violently to X.M.'s abuse and placed the blame on the victim.  Given

14

Grandmother's unstable mental health, her violent reaction, and denials of X.M.'s responsibility for sexually abusing a four year old, it appears being in Grandmother's care poses a risk of danger to N.D.'s wellbeing because N.D. is too young to protect himself. As a result, there is substantial evidence supporting the juvenile court's conclusion that it would be in N.D.'s best interests to terminate the guardianship.

### C.     BEST INTERESTS ANALYSIS

Grandmother contends the juvenile court erred in conducting its best interests analysis because, rather than considering more abstractly whether it was in N.D.'s best interests to terminate the guardianship, the court considered whether N.D.'s interests would be better served by reunifying with Mother or Grandmother—weighing the two parental options against one another.

When terminating Grandmother's guardianship of N.D., the juvenile court said it adopted the Department's attorney's "argument as the basis for the [c]ourt's findings." The Department argued the guardianship should be terminated because (1) Grandmother acted irresponsibly by leaving I.D. and N.D. in the care of X.M. on the day of the sexual abuse; (2) Grandmother has unresolved mental health issues and is self-medicating with marijuana; and (3) Mother was better suited to reunification with N.D. than Grandmother.

As set forth *ante*, the termination of a probate guardianship is reviewed for substantial evidence (*In re Xavier R.*, *supra*, 201 Cal.App.4th at p. 1416), and substantial evidence supports the juvenile court's ruling. The juvenile court's decision in this case was based on evidence, i.e., Grandmother's actions and mental health issues,

15

and the comparison between Mother and Grandmother. Grandmother has seized on the comparison aspect of the reasoning. This argument is not persuasive because this court reviews rulings, not reasoning. (*In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1271.) Therefore, while part of the juvenile court's reasoning may have been flawed, that will not support reversal of the judgment, because, as set forth *ante*, substantial evidence supports the court's termination of the guardianship and we do not review reasoning.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                                      J.

We concur:

HOLLENHORST
            Acting P. J.

KING
                  J.

16