Filed 5/4/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THEODORE P. KRACKE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>CITY OF SANTA BARBARA,<br><br>   Defendant and Appellant. | 2d Civ. No. B300528<br>(Super. Ct. No. 56-2016-<br>00490376-CU-WM-VTA)<br>(Ventura County) |

     Prior to 2015, the City of Santa Barbara (City) encouraged the operation of short-term vacation rentals (STVRs) along its coast by treating them as permissible residential uses. In June 2015, the City began regulating STVRs as "hotels" under its municipal code, which effectively banned STVRs in the coastal zone. The City did not seek a coastal development permit (CDP) or an amendment to its certified Local Coastal Program (LCP) prior to instituting the ban.

     Theodore P. Kracke, whose company manages STVRs, brought this action challenging the new enforcement policy. Following a bifurcated trial, the trial court granted Kracke's

petition for a writ of mandate enjoining the City's enforcement of the STVR ban in the coastal zone unless it obtains a CDP or LCP amendment approved by the California Coastal Commission (Commission) or a waiver of such requirement. The City appeals.

The goals of the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; Coastal Act)[1] include "[m]aximiz[ing] public access" to the beach (§ 30001.5, subd. (c)) and protecting "[l]ower cost visitor and recreational facilities." (§ 30213; see § 31411, subd. (d) ["A lack of affordable accommodations remains a barrier to coastal access"]; *Greenfield v. Mandalay Shores Community Assn.* (2018) 21 Cal.App.5th 896, 899-900 (*Greenfield*).) To ensure that these and other goals are met, the Coastal Act requires a CDP for any "development" resulting in a change in the intensity of use of or access to land or water in a coastal zone. (§§ 30600, subd. (a), 30106; *Greenfield,* at p. 898.)

The City contends the trial court erred by concluding the STVR ban constituted a "development" under the Coastal Act. But, as the court explained, "[t]he loss of [STVRs] impacted the 'density or intensity of use of land' and 'the intensity of use of water, or of access thereto' because STVRs provide a resource for individuals and families, especially low-income families, to visit the Santa Barbara coast. The unavailability of low-cost housing and tourist facilities was an impediment to coastal access." Consequently, the Coastal Act required the Commission's approval of a CDP, LCP amendment or amendment waiver before the ban could be imposed. (See *Greenfield, supra,* 21 Cal.App.5th at pp. 900-901.) There was no such approval. We affirm.

---

[1] All statutory references are to the Public Resources Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

The City's LCP was certified in 1981 when STVRs were virtually nonexistent. The City maintains that STVRs are not legally permitted under either the LCP or its municipal code even though it allowed them to operate until 2015. The City only required the homeowner to register the STVR, to obtain a business license and to pay the 12 percent daily transient occupancy tax. The City's enforcement efforts focused on nuisance complaints about a particular STVR. In 2010 and 2014, the City identified owners who had failed to pay the 12 percent daily tax and offered them "amnesty" if they voluntarily complied. The amnesty program was not intended to curb the number of STVRs but rather to increase the City's tax revenue.

As of 2010, there were 52 registered STVRs paying daily occupancy taxes. By 2015, this number had increased to 349, including 114 STVRs in the coastal zone. In that fiscal year alone, the City collected $1.2 million in STVR occupancy taxes.

In June 2015, City staff issued a Council Agenda Report advising that "[a]ll vacation rentals or home shares that are not zoned and permitted as hotels, motels, or bed and breakfasts are in violation of the Municipal Code." The City found that the proliferation of STVRs was driving up housing costs, reducing housing stock and changing the character of residential zones.

Following a hearing, the City Council unanimously directed its staff to proactively enforce the City's zoning regulations, "which prohibits hotel uses in most residential zoning districts." This action effected an STVR ban in residential areas and strict regulation of STVRs as "hotels" in commercial and R-4 zones. By August 2018, the 114 coastal STVRs had dwindled to just 6. As

3

one City councilmember observed, "[T]he door is closing on vacation rentals."

Kracke filed this action on November 30, 2016. Six days later, the Commission's Chair, Steve Kinsey, sent a guidance letter to local governments, including the City, outlining "the appropriate regulatory approach to vacation rentals in your coastal zone areas moving forward." He explained: "[P]lease note that vacation rental regulation in the coastal zone <u>must</u> occur within the context of your local coastal program (LCP) and/or be authorized pursuant to a coastal development permit [CDP]. The regulation of short-term/vacation rentals represents a change in the intensity and use and of access to the shoreline, and thus constitutes development to which the Coastal Act and LCPs must apply. We do not believe that regulation outside of that LCP/CDP context (e.g., outright vacation rental bans through other local processes) is legally enforceable in the coastal zone, and we strongly encourage your community to pursue vacation rental regulation through your LCP."

In January 2017, Jacqueline Phelps, a Coastal Commission Program Analyst, followed up with the City Planner, Renee Brooke. Phelps explained that the Commission "disagree[s] with the City's current approach to consider residences used as STVRs as 'hotel' uses (pursuant to the City's interpretation of the definition of 'hotel' included in the [Municipal Code] for the purpose of prohibiting or limiting STVRs in residential zones." She directed Brooke to the 2016 guidance letter and again urged the City "to process an LCP amendment to establish clear provisions and coastal development permit requirements that will allow for STVRs and regulate them in a manner consistent

4

with the Coastal Act." The Commission's Deputy Director, Steve Hudson, sent a similar letter a few months later.

After considering the evidence, the trial court found that the City's STVR enforcement policy constituted a "development" within the meaning of section 30106 of the Coastal Act. It issued a writ requiring the City to allow STVRs "in the coastal zone on the same basis as the City had allowed them to operate prior to June 23, 2015, until such time as the City obtains a coastal development permit or otherwise complies with the provisions of the Coastal Act . . . ."[2]

DISCUSSION

*Standard of Review*

In reviewing a judgment granting a petition for writ of mandate under Code of Civil Procedure section 1085, we apply the substantial evidence standard to the trial court's factual findings. (*Cox v. Los Angeles Unified School Dist.* (2013) 218 Cal.App.4th 1441, 1444-1445.) On questions of law, including statutory interpretation, we apply the de novo standard. (*Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 746.)

*The City Lacked Authority to Unilaterally Ban*
*STVRs in the Coastal Zone*

The Coastal Act is designed to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial

---

[2] Consistent with its prior correspondence with City staff, the Commission has filed an amicus curiae brief supporting Kracke's claims. The League of California Cities' amicus brief supports the City.

resources." (§ 30001.5, subd. (a); *Fudge v. City of Laguna Beach* (2019) 32 Cal.App.5th 193, 200 (*Fudge*).) It also seeks to "[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners." (§ 30001.5 subd. (c); *Fudge*, at p. 200.) The Commission is charged with implementing the Coastal Act's provisions and "is in many respects the heart of the Coastal Act." (*Fudge*, at pp. 200-201.)

The Coastal Act tasks local coastal governmental entities, such as the City, with developing their own LCPs to enforce the Act's objectives. (*Fudge*, *supra*, 32 Cal.App.5th at p. 201.) The LCP's content is determined by the entity but must be prepared in "'full consultation'" with the Commission. (*Ibid.*) Once completed, the LCP is submitted to the Commission for certification. (§§ 30512-30513; *Fudge*, at p. 201.)

Although the Coastal Act does not displace a local government's ability to regulate land use in the coastal zone, it does preempt conflicting local regulations. (§ 30005, subd. (a); *City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 200.) "'[A] fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.' [Citation.]" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794 (*Pacific Palisades*); see *Charles A. Pratt Construction Co., Inc. v. California Coastal Com.* (2008) 162 Cal.App.4th 1068, 1075 ["The Commission has the ultimate authority to ensure that coastal development conforms to the policies embodied in the state's Coastal Act"].)

6

"[T]he Coastal Act [also] requires that any person who seeks to undertake a 'development' in the coastal zone obtain a [CDP].  (§ 30600, subd. (a).)  'Development' is broadly defined to include, among other things, any 'change in the density or intensity of use of land . . . .'  Our courts have given the term 'development' '[a]n expansive interpretation . . . consistent with the mandate that the Coastal Act is to be "liberally construed to accomplish its purposes and objectives."'" (*Greenfield*, *supra*, 21 Cal.App.5th at p. 900, citations omitted.)  Thus, "'development'" under the Coastal Act "is not restricted to activities that physically alter the land or water.  [Citation.]" (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 796; *Surfrider Foundation v. California Coastal Com.* (1994) 26 Cal.App.4th 151, 158 ["[T]he public access and recreational policies of the Coastal Act should be broadly construed to encompass *all* impediments to access, whether direct or indirect, physical or nonphysical"].)

Consequently, "[c]losing and locking a gate that is usually open to allow public access to a beach over private property is a 'development" under the Coastal Act.  [Citation.]  So is posting 'no trespassing' signs on a 23-acre parcel used to access a Malibu beach.  [Citation.]" (*Greenfield*, *supra*, 21 Cal.App.5th at p. 900.)  Fireworks displays also are considered developments even though not "commonly regarded" as such.  (*Gualala Festivals Committee v. California Coastal Com.* (2010) 183 Cal.App.4th 60, 67.)

In *Greenfield*, a homeowners' association (HOA) adopted a resolution banning STVRs in the Oxnard Shores beach community.  The resolution affected 1,400 single-family units and imposed fines for violations.  (*Greenfield*, *supra*, 21 Cal.App.5th at p. 899.)  The City of Oxnard's LCP, which was certified in

7

1982, did not mention STVRs, but Oxnard historically treated them as residential activity and collected transient occupancy taxes.  (*Ibid.*)

A homeowner sought a preliminary injunction enjoining the HOA's STVR ban.  In denying the request, the trial court rejected the Commission's position that the ban constituted a "development" under the Coastal Act.  (*Greenfield*, *supra*, 21 Cal.App.5th at p. 899.)  We reversed the court's order, noting "the [STVR] ban changes the intensity of use and access to single-family residences in the Oxnard Coastal Zone.  [STVRs] were common in Oxnard Shores before the . . . ban; now they are prohibited."  (*Id.* at p. 901.)  As we explained, "[t]he decision to ban or regulate [STVRs] must be made by the City and Coastal Commission, not a homeowner's association.  [The] ban affects 1,400 units and cuts across a wide swath of beach properties that have historically been used as short term rentals."  (*Id.* at pp. 901-902.)

The same is true here.  Although the City, rather than a private entity, imposed the coastal STVR ban, it also was accomplished without the Commission's input or approval.  The LCPs in both cases were certified in the 1980s, decades before STVRs became popular due to the availability of Internet booking services.  The City incorrectly contends that because STVRs are not expressly included in the LCP, they are therefore excluded, giving the City the right to regulate them without regard to the Coastal Act.  As we clarified in *Greenfield*, regulation of STVRs in a coastal zone "must be decided by the City *and* the Coastal Commission."  (*Greenfield*, *supra*, 21 Cal.App.5th at p. 901, italics added.)  The City cannot act unilaterally, particularly when it not

8

only allowed the operation of STVRs for years but also benefitted from the payment of transient occupancy taxes.

In other words, the City did not merely "turn a blind eye" to STVRs. It established procedures whereby a residential homeowner could operate a STVR by registering it with the City, obtaining a business license and paying the 12 percent daily transient occupancy tax. When the City abruptly changed this policy, it necessarily changed the intensity of use of and access to land and water in the coastal zone. (§§ 30600, subd. (a), 30106; *Greenfield*, *supra*, 21 Cal.App.5th at p. 901.) Instead of 114 coastal STVRs to choose from, City visitors are left with only 6. This regulatory reduction is inconsistent with the Coastal Act's goal of "improv[ing] the availability of lower cost accommodations along the coast, particularly for low-income and middle-income families." (§ 31411, subd. (e).)

We agree with the trial court that "[t]he City cannot credibly contend that it did not produce a change because it deliberately acted to create a change" in coastal zone usage and access. This change constituted a "development" under the Coastal Act and, as such, required a CDP or, alternatively, an LCP amendment certified by the Commission or a waiver of such requirement.[3] (See *Greenfield*, *supra*, 21 Cal.App.5th at pp. 901-902.) Without the Commission's input and approval, the court appropriately struck down the City's STVR regulation in the coastal zone.

As for the City's argument that the Coastal Act exempts abatement of nuisances allegedly caused by STVRs, the City

___

[3] The record reflects that the City submitted an LCP amendment in 2018. That amendment is pending before the Commission.

waived that issue by informing the trial court it was not "making the nuisance argument."  (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.)  Nor are we persuaded that the political question and separation of powers doctrines apply.  The decision whether to ban or regulate STVRs in the coastal zone is a matter for the City and the Commission to decide.  (*Greenfield*, *supra*, 21 Cal.App.5th at pp. 901-902.)  The trial court appropriately expressed no opinion on the issue and none should be inferred from either its ruling or our decision.

DISPOSITION

The judgment is affirmed.  Kracke shall recover his costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

YEGAN, Acting P. J.

TANGEMAN, J.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Ariel Pierre Calonne, City Attorney, Robin Lewis, Assistant City Attorney; Best Best & Krieger, Christi Hogin and Amy Hoyt for Defendant and Appellant.

Rutan & Tucker and Philip D. Kohn for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Nossaman, Steven H. Kaufman; Crescent Cheng; Rogers, Sheffield & Campbell, Travis C. Logue and Jason W. Wansor for Plaintiff and Respondent.

Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, Andrew M. Vogel and Norma N. Franklin, Deputy Attorneys General, for California Coastal Commission as Amicus Curiae on behalf of Plaintiff and Respondent.